GURLEY *v*. STATE.

Opinion delivered March 5, 1923.

1. EMBEZZLEMENT—INDICTMENT—VARIANCE.—Where the indictment charged embezzlement of $800 gold, silver and paper money of the value of $800, property of the prosecuting witness, and the proof showed that the company which accused owned and managed had collected $800 in the form of a check for the prosecuting witness, received credit therefor at the bank, and expended same for its private uses, there was no variance between the indictment and proof.

2. CRIMINAL LAW—JUDICIAL NOTICE.—It is common knowledge that banks deal in money only in giving credit to depositors.

3. EMBEZZLEMENT—CRIMINAL INTENT.—Where there has been a wrongful conversion of a fund, criminal intent to embezzle may be inferred from the act itself, and proof of concealment on defendant's part is unnecessary.

Appeal from Pulaski Circuit Court, First Division; *John W. Wade*, Judge; affirmed.

*Lewis Rhoton* and *X. O. Pindall*, for appellant.

*J. S. Utley*, Attorney General, *Elbert Godwin* and *Wm. T. Hammock*, Assistants, for appellee.

HUMPHREYS, J. Appellant was indicted, tried, and convicted of the crime of embezzlement in the First Division of the Pulaski Circuit Court, and as punishment

therefor was adjudged to serve one year in the State Penitentiary, from which judgment an appeal has been duly prosecuted to this court.

The indictment, omitting formal parts, is as follows: "The said J. A. Gurley on the 1st day of May, 1922, in the county and State aforesaid, then and there being over the age of sixteen years, and being the agent of E. T. Foster, and having then and there in his custody and possession, as such agent as aforesaid, eight hundred dollars ($800), gold, silver and paper money of a value of eight hundred dollars ($800), the property of the said E. T. Foster, did unlawfully, fraudulently and feloniously make away with and embezzle and convert to his own use the said sum of eight hundred dollars ($800) as aforesaid, without the consent of the said E. T. Foster, against the peace and dignity of the State of Arkansas."

The facts pertinent to the questions presented by this appeal for determination are as follows: E. T. Foster, at the instance of appellant, loaned Mrs. Anna Grantham $800, taking her note due January 1, 1921, to which bank stock was attached as collateral security. On December 8, 1920, appellant, as vice-president of J. A. Gurley Company, a corporation, advised E. T. Foster, who was then residing in Oklahoma City, Oklahoma, that Mrs. Grantham wanted to know where she could pay the note, offering to handle the collection according to Foster's wishes. The note and attached collateral were in a lock box in a Memphis bank. E. T. Foster directed a friend to forward the note and collateral to appellant by registered letter, and wrote appellant to have Mrs. Grantham purchase and mail him a cashier's check for the amount due, and, when she did so, to deliver the note and collateral to her. Instead of doing this, appellant pro- cured a check for the amount from Mrs. Grantham, payable to the J. A. Gurley Company, which he owned and managed, and upon receipt of said check delivered the note and bank stock to her. The check was deposited to the credit of J. A. Gurley Company, and checked out for company purposes, and not for a cashier's check, payable

to E. T. Foster. J. A. Gurley, as vice-president of J. A. Gurley Company, notified E. T. Foster of the collection by letter, stating therein, "as soon as we get a return on her check, will forward cashier's check to you." After the expiration of a month, failing to receive a remittance, E. T. Foster made written request of appellant to forward cashier's check, to which he received the following reply:

> "J. A. GURLEY COMPANY
> "Investment Bankers
> "Little Rock, Ark., 3-1-21.

"Mr. E. T. Foster,
"Dear sir:

"I have your letter of February 17th and have carefully noted contents of same. I am going to tell it to you just as it is. I received bank stock just as they were sent from Memphis by registered mail, delivered same and bank check for collection. Now in the meantime my company issued stock, and it was up to me to take the majority of the stock or lose control of my company, and in doing so I drew my bank balance below the $800 mark, and it was continued below. I have about $5,000 in collections that are past due and have been expecting to get at least a sufficient amount of this to remit to you, but have so far failed. I am responsible for the rule not to allow any officer of our company to borrow any money from the company, consequently I have not asked them to advance it to me.

"Now, Mr. Foster, I am attaching a 10 per cent. note to $3,000 worth of my stock and am leaving the time open. I would like to have you make it six months, if entirely satisfactory to you. If you will give me the time you prefer, I will mail you a check for the interest. It has not and is not my intention to misuse you in this matter, and if the above arrangement is not entirely satisfactory I want you to notify me at once, and will make a sacrifice somewhere and raise the money for you.

> "With best personal regards, I remain,
> "Yours truly,
> "J. A. GURLEY."

Foster returned the 10 per cent. note and stock immediately, stating that he could not use them, and again requested appellant to forward cashier's check for $800. Foster was unable to get any further response or to collect the account from appellant. The company subsequently went into the hands of a receiver.

At the conclusion of the testimony, appellant requested the court to direct a verdict of not guilty, and now insists that the court committed reversible error in not doing so, for two alleged reasons. First, because there is a variance between the indictment and the proof. Second, because there is no evidence in the record showing any criminal intent on the part of appellant in his transaction with reference to the money referred to in the indictment.

(1) The indictment. charged appellant with embezzling $800, gold, silver and paper money, of the value of $800, the property of E. T. Foster. The proof shows that the company which he owned and managed collected $800, in the form a check for E. T. Foster from Mrs. Anna Grantham, received credit therefor in the bank with which the company did business, and expended same, contrary to instructions, for the private use and benefit of said company. The transaction, in substance, amounted to the same thing as if appellant had drawn the money out on the check and deposited it in the bank to his company's credit, thereby converting it to the use of his company, contrary to instructions. It is common knowledge that banks deal in money only when giving credit to their depositors. "The giving of credit is practically and legally the same as paying the money to the depositor and then receiving the money again on deposit. The intent of the parties must govern, and presenting a check on the bank with a pass book in which the receiving teller notes the amount of the check is sufficient indication of intent to deposit and to receive as cash." Morse on Banks and Banking, § 569. The rule quoted from Morse was adopted by this court in the case of *Skarda* v. *State,* 118 Ark. 176. In that case Joe

Skarda, cashier of The Bluff City Bank, was indicted for receiving on deposit from Joe Janet fifty-five dollars, gold, silver, and paper money, knowing at the time that the bank was insolvent. The proof showed that Joe Janet presented a check to the bank for $70, receiving a credit for $55 and the balance in cash. The court treated the credit as cash money, and held that there was no variance between the indictment and the proof. The rule thus announced is not in conflict with the rule in *Wilborn* v. *State,* 60 Ark. 14, and the reiteration thereof in *Starchman* v. *State,* 62 Ark. 538; *Marshall* v. *State,* 71 Ark. 418; and *Silvie* v. *State,* 117 Ark. 108, but is in harmony with them. The cases last cited enunciate the doctrine that the State must prove the character of money alleged to avoid a variance between the indictment and the proof, and the Skarda case, the doctrine that the State must prove what amounts in fact to a transaction in money of the character alleged.

(2) According to appellant's interpretation of the testimony, there is nothing to show a felonious intent on his part because he made no concealment of the amount in his hands belonging to E. T. Foster. We are unable to adopt appellant's construction of the testimony, but, if his construction is correct, it is not the law that some degree of concealment must be shown in order to establish a felonious intent, where the property has been wrongfully converted or appropriated. The case of *Fleener* v. *State,* 58 Ark. 98, cited by appellant in support of his contention, that the concealment of the fund was necessary to establish a felonious intent on his part, is not in point. In that case there had been no misappropriation of the property. Upon this point the instant case is ruled by *Russell* v. *State,* 112 Ark. 282, in which it was said that "one guilty of embezzlement cannot claim immunity because he did not attempt to conceal the evidence of his crime." Where there has been a wrongful conversion of a fund charged, a jury may infer a criminal intent from the act itself, and proof of the concealment of the fund is unnecessary.

No error appearing, the judgment is affirmed.