GLOVER *v.* STATE.

Crim. 4035.

Opinion delivered May 17, 1937.

*E. W. Martin,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

GRIFFIN SMITH, C. J.   Appellant was tried in the Little Rock municipal court and fined $25 and cost, charged with having violated subdivision "f" of § 1 of act 81 of 1935.   He appealed to the circuit court and when tried by a jury was found guilty and fined $100, and has appealed to this court.

As grounds for reversal it is contended (1) that the court erred in admitting certain testimony; (2) that there should have been a directed verdict; (3) that the verdict and judgment are violative of art. 14, § 1, of the Constitution of the United States, and (4) that the appellant was prejudiced by an instruction, given orally.

Act 81 is entitled, "An act for the protection of manufacturers and distributors of liquid fuels, lubricating oils, greases, and similar products."   That part of the act invoked by the state provides that "any person who shall aid or assist any other person in * * * depositing or delivering into any tank, receptacle, or other container, any liquid fuels, lubricating oils, greases or like products, other than those intended to be stored therein and distributed therefrom as indicated by the name of the manufacturer or distributor or the trade-mark, trade name, or distinguishing mark, of the product displayed on the container itself, or on the pump, or other distributing device used in connection therewith, or shall by any other means aid or assist another in the violation of any of the provisions of this act, is guilty of a misdemeanor,

and upon conviction for a first offense shall be punishable by a fine of not more than $200, or by imprisonment for not more than thirty days, or both, and for a second or subsequent offense, by a fine of not less than $200 nor more than $500, or by imprisonment for not more than one year, or by both such fine and imprisonment.''

Section 2 of the act construes ''person'' to include every natural person, firm, copartnership, association or corporation. There is this further provision: ''If any firm, copartnership, association or corporation shall commit a misdemeanor according to the provisions of this act, every director, officer, agent, employee or member participating in, aiding, or authorizing the acts constituting such misdemeanor shall be guilty of having committed a misdemeanor hereunder and shall be subject to the punishment above provided for.''

Appellant is engaged in retailing and wholesaling gasoline and oil products, and operates as Glover Oil Company, on the Arch Street Pike, just out of Little Rock.

R. D. Whitworth and his wife operated a store and filling station on highway 65. At the time the illegal sales are alleged to have been made, the filling station was equipped with pumps and tanks belonging to the Sinclair Oil Company, and the name of the distributor or manufacturer (Sinclair Oil Company) was on the equipment.

Whitworth testified that his station was ''a regular Sinclair station.'' Specifically, the state charged that appellant, through one of his drivers, made deliveries of Glover products to the Whitworth-Sinclair tanks.

The transactions complained of occurred in November or December, 1935. In answer to a question, ''Did the truck of the Glover Oil Company make delivery of fuel into your tanks during the months of November and December last year?'' Whitworth replied: ''Yes, sir, by me flagging. I flagged them on the highway and stopped them. During the six months from July to December 31, I imagine the Glover Oil Company truck stopped about ten times and delivered white gasoline,

commonly known as clear, third-grade gasoline. There would be no 'set' driver. I paid cash and did not take receipts, and did not keep books nor sign delivery tickets. I was not getting good service from the Sinclair Company, and decided to go with Mr. Glover. I asked if he would be interested in giving me a station, and he said that if I wanted to make a change, he would. I did not say anything to him about having sold Glover products while operating a Sinclair station.'' Asked if, while operating the Sinclair station, he had ever telephoned Mr. Glover for gasoline, the witness replied: ''I called the Glover Oil Company and asked them to send out fifty gallons of gasoline. It was delivered by a driver, and I think his name was Taber. That was in December, 1935, I think. I placed a telephone call with the cashier or bookkeeper, or someone at the Glover Oil Company. It was delivered in an hour, or an hour and a quarter.''

The witness said that Mr. Glover, personally, did not know of the orders or deliveries.

Mrs. Whitworth, when asked if she bought gasoline from the Glover Company, replied, ''Sure did! It was delivered by the first truck I flagged, but I did not telephone in any orders. On one occasion I sent a message to the company that I wanted gasoline, and in response to the message a Glover Oil Company truck came out with fifty gallons, for which I paid cash. I do not know what driver made the delivery. It was put in the 'clear' pump. This pump had a Sinclair 'globe' on it. It was clear gasoline, but when I delivered it to customers it was red. I colored it to attract attention, and when I sold it I told my customers ·I was selling Glover white gasoline 'colored up.' '' Asked if she knew whether the man who brought the gasoline received her message, witness replied: ''He drove up and asked if I was the party that wanted some gas.''

W. C. Taber testified that he worked for himself, owned his own truck, and ''worked up'' his own delivery route, but handled Glover Oil Company gas. Had been with the company a little over two years. Thought his

first delivery to the Whitworths was in December. Was stopped by one of the Whitworths and made sale of forty gallons of gasoline. Could not tell how many times he made deliveries. Didn't think he came out with fifty gallons in response to a telephone call. "My truck has Glover Oil Company sign painted on it, but I paid for having that done. I buy from other oil companies and make sales. I have delivered kerosene to the Whitworths, and also on one occasion delivered 25 or 26 gallons of first-grade gasoline. I don't recall whether Mr. Glover ever directed me to go to any particular place. On credit accounts, if the amounts were more than I could stand, I would O. K. the charges to Mr. Glover and he would hold them for me. Sometimes he would give me a slip showing how much my customers owed. It was my business to collect for gasoline and deliver the money to Mr. Glover—I was responsible to Mr. Glover for the charges."

Appellant's testimony was a complete denial of any knowledge of the Whitworth transactions. He maintained that Taber was an independent operator and that his (appellant's) connection with the deliveries was only that of a wholesaler selling directly to his customer, Taber.

(1) Mrs. Whitworth's testimony was properly admitted. She sent a message to the Glover Oil Company by some unknown person, requesting the service. A truck promptly came from the Glover Oil Company and delivered fifty gallons of gasoline. The court did not err in overruling a general objection to this testimony. Although Mrs. Whitworth's act in requesting a stranger to convey a message to appellant was not, standing alone, of sufficient importance to afford information as to appellant's conduct, yet delivery of gasoline shortly thereafter was a circumstance tending to explain cause and effect. It is an accepted rule that a relevant fact will not be rejected because not sufficient in itself to establish the whole or any definite portion of a party's connection, "but all that is required is that the fact must legitimately tend to prove some matter in issue, or to make a proposition in issue more or less probable. Indeed, it is suffi-

cient if the fact may be expected to become relevant in connection with other facts, or if it forms a link in the chain of evidence necessary to support a party's contention, although requiring other evidence to supplement it." 22 C. J., § 91, page 164.

Nor was it error to admit statements of Mrs. Whitworth that she was purchasing white gasoline and coloring it red. It is a matter of common knowledge that many of the high-test gasolines are colored red. If the witness in her effort to direct attention to the commodity offered for sale saw an advantage in simulating the higher grades, and in doing so made use of Sinclair tanks and pumps in the distribution of "white," or "third-grade" Glover gasoline, it was not improper for evidence of this conduct to go to the jury as a circumstance tending to confirm the state's theory that the prohibited service was supplied by the Glover Company.

(2) The trial court properly refused to direct a verdict for the defendant.

(3) It is insisted that the verdict of the jury and the judgment thereon are in violation of art. 14, § 1, of the Constitution of the United States, which provides that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." Appellant does not mention the manner in which his privileges or immunities have been unlawfully abridged. The Supreme Court of the United States, in *Presser* v. *Illinois,* 116 U. S. 252, 6 S. Ct. 580, 29 L. Ed. 615, held that: "It is only the privileges and immunities of citizens of the United States that the clause relied on was intended to protect. A state may pass laws to regulate the privileges and immunities of its own citizens, provided that in so doing it does not abridge their privileges and immunities as citizens of the United States." The trial court was correct in overruling this objection.

(4) It is finally argued that the court erred in giving the following instruction: "If you believe the defendant, E. D. Glover, participated in or authorized the acts done by Mr. Taber in putting Glover Oil Company prod-

ucts into tanks branded by the Sinclair Oil Company, then he would be guilty. If he did not knowingly participate in it, then he would not be guilty."

The objection, as reflected by appellant's brief, is that it was a comment on the testimony, confusing, and misleading. The record shows that a general objection was interposed, and the reasons assigned in the brief were not brought to the court's attention. But even if the specific objection had been made, it should have been overruled. The instruction was in no sense a comment on the testimony, nor was it confusing or misleading. On the contrary, it told the jury that, as a matter of law, the defendant would be guilty if he participated in or authorized the acts complained of, and that, if he did not do so, he would not be guilty. This was a correct declaration of the law, and the duty then rested upon the jury to determine as a matter of fact whether the defendant committed the acts charged to him.

Affirmed.