WILLIAMS *v.* STATE.

4746                                      261 S. W. 2d 263

Opinion delivered October 12, 1953.

W. E. *Billingsley* and S. M. *Bone,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

PAUL WARD, Justice. Appellant, John Williams, was indicted, tried, and convicted for introducing fraudulent ballots in the ballot box of Baker Township in the Democratic Primary Election held on August 12, 1952. He has appealed on the general ground, among other grounds, that there is no evidence to sustain the conviction.

The statute under which appellant was indicted and convicted is Ark. Stats. Supp., § 3-1525 which is the same as § 8 of Act 482 of 1949. The applicable portion of the statute, as set out by the trial court in the instructions, reads as follows:

"Any person who adds or attempts to add any ballot to those legally polled at any election either by fraudulently introducing it into the ballot box before or after the ballots have been counted, or at any other time, or in any other manner, with the intent or effect of affecting the count or recount of the ballots, . . . shall be guilty of a misdemeanor."

FACTS. There is no dispute about the material facts presented by the evidence, and they are substantially as presently set forth.

One Jesse Burns and his wife drove up to the Baker box late in the afternoon and Jesse went in to vote just as the officials were preparing to count the ballots. He was told by the officials that they had no blank ballots left but that if he could find a piece of paper they would

allow him or help him to make up a ballot and vote. As Jesse left the building to look for such a paper he met appellant and told him what he wanted. Appellant then informed Jesse that he had some blank ballots in his car and offered them to him, and also asked Jesse if he wanted his wife to vote. Jesse replied that his wife was present but was not going to vote. Nothing else was said in this connection [as far as the record reflects] but Jesse testified that he got two blank ballots from appellant. Jesse then went back to the voting booth, and with the knowledge and consent of the election officials, voted one ballot for himself and one for his wife who, he says, had told him how she wanted to vote. The blank ballots which appellant gave Jesse were regular printed official ballots, but in some way and for some reason unexplained by the evidence the lower right hand corner of each ballot, where the unopposed candidate for Township Committeeman appeared, had been cut out.

Appellant in no way, or at least in no other way, encouraged Jesse to vote either for himself or his wife and he in no way indicated to them or either of them how or for whom they should vote. There is no evidence that appellant or anyone else was interested in who was elected Township Committeeman. Appellant was approximately 30 feet from the voting booth when the conversation and transaction mentioned above took place, and he had not been seen around the Baker box previously on this day except that he was seen by one of the election officials in the street around noon. The uncontradicted, but corroborated, testimony of appellant was that he obtained the blank ballots from the officials of the Day box [with their consent] after they had closed the polls, and his explanation was that he wanted them to use in tabulating the votes.

No other facts or circumstances were shown by the State's testimony to indicate that appellant had any fraudulent intent or ulterior motive in doing what he did.

Appellant made a motion for an instructed verdict of not guilty at the close of the State's testimony and

again at the close of all the testimony, but each time the motion was overruled. We think appellant was entitled to such an instruction.

The lower court properly viewed and defined the issues. It recognized that the distinction between accessories and principals had been abolished, and correctly defined an accessory [Ark. Stats., §§ 41-118 and 41-119]. It also properly limited the issues involving appellant's guilt to two: (a) The "clipped" ballots, and (b) The wife's vote. In our opinion the evidence was not sufficient to make a jury question on either issue. Hereafter in discussing these issues as defined above it must be remembered that the statute under which appellant was indicted contains the significant words "fraudulently" and "intent," and that therefore the evidence must show some animus or fraudulent intent on the part of appellant before he can be adjudged guilty.

(a) The "clipped" ballots. Under the facts above stated it would require imagination and conjecture to attribute any fraudulent intent on the part of appellant from the mere fact that he gave Jesse Burns the ballots which had been "clipped." The facts would indicate otherwise, because the initiative came from Jesse Burns and not from appellant and the State's testimony shows positively that appellant indicated no desire on his part as to how the ballots should be cast. There is not the slightest intimation that there was any contest over or interest in who should be elected committeeman in Baker Township.

(b) The wife's vote. After Jesse Burns received the blank ballots from appellant he entered the voting booth and, with the consent of the election officials, cast one ballot for himself and one for his wife in her absence. It appears to us that before the jury could attribute to appellant any fraudulent or ulterior motive it would have to assume, in the absence of proof, first, that appellant knew Burns was going to use one of the ballots for his wife's vote, and second, that appellant knew that Burns was going to vote his wife in her absence, and further

that appellant in some way gave encouragement and direction to Burns.

While the jury might possibly have been in possession of certain knowledge which strongly induced it to believe that all of appellant's actions were a part of a fraudulent scheme to produce votes favorable to some candidate of his choice, yet it is also true that under the evidence appellant's actions might have been prompted only by a desire to accommodate a friend who wanted to exercise his right to vote. The mere fact that appellant asked Burns if his wife wanted to vote is no evidence of fraud or fraudulent intent. Even if he had encouraged her to vote he would have done no more than is frequently done, with public approval, by many civic organizations and newspapers. It is common knowledge that they put on intensive drives to encourage people to vote.

It is a wise rule, developed through the years by judicial and legislative processes, that no one shall be deprived of his liberty or property on mere suspicion or conjecture. This and other courts have many times reaffirmed this vital safeguard against the miscarriage of justice.

In the case of *Jones* v. *State,* 85 Ark. 360, at page 362, 108 S. W. 223, we find this language: "There is just enough in the evidence to warrant a suspicion that appellant, when he traded with Ellison, might have known that the latter was assuming more authority over Dr. Neice's cattle than he really had. But mere grounds for suspicion do not justify conviction of crime. There must be substantial proof." In *Hogan* v. *State,* 170 Ark. 1143, 282 S. W. 984, the court reaffirmed that "guilt cannot be established by conjecture." In *Moran* v. *State,* 179 Ark. 3, at page 7, 13 S. W. 2d 828, the rule is stated in this language: "It is not allowable, under the rules of evidence, to draw one inference from another, or to indulge presumption upon presumption to establish a fact. Reasonable inferences may be drawn from positive or circumstantial evidence, but to allow inferences to be drawn from other inferences, or pre-

sumptions to be indulged from other presumptions, would carry the deduction into the realm of speculation and conjecture.''

The rule is forcibly stated by the Supreme Court of Virginia in the case of *Dotson* v. *Commonwealth,* 171 Va. 514, 199 S. E. 471, at page 473, in this language: ''From the facts shown, no reasonable inference of guilt can be deduced which will be equivalent to proof of guilt beyond a reasonable doubt which is always necessary. Where inferences are relied upon to establish guilt, they must point to guilt so clearly that any other conclusion would be inconsistent therewith. This is true no matter how suspicious circumstances may be.''

For the reasons above stated the judgment of the trial court is reversed.

The Chief Justice and Justices MILLWEE and GEORGE ROSE SMITH dissent.