DAVIS *v.* STATE

[No. 32, October Term, 1954.]

*Decided December 10, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Ernest L. Perkins,* with whom were *R. Palmer Ingram* and *Malcolm J. Coan,* on the brief, for appellant.

*Ambrose T. Hartman,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, *Anselm Sodaro,* State's Attorney for Baltimore City, and *Joseph G. Koutz,* Assistant State's Attorney, on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was convicted of having lottery tickets in his possession, in a trial by the court sitting without a jury, and sentenced to six months in the House of Correction and a fine of $1,000. It is contended that there was a lack of probable cause for the issuance of a search warrant, and that the verdict was clearly erroneous, taking the evidence as a whole.

We find no merit in the contention as to the search warrant. It was based upon an affidavit detailing the observations of Officer Cheeks on September 8 and 9, 1953. He saw a described man enter a described automobile, look through some papers, throw away a slip of paper, and drive off. The officer retrieved the slip and found thereon a lottery station number and two lottery numbers with the amount of play. On the following day, he saw the same man drive up to a certain tavern and go in. He followed him, and saw another man hand

him a small brown envelope, a second man approach him and put something in his pocket. The described man went out to his automobile and then returned to the tavern. The affidavit recited that the lottery known as "numbers" requires that the play be collected by "runners" and "writers" and returned to the person conducting the operation. It stated the belief of the affiant that the person described was such a "runner" or "writer".

The applicable rules of law have been so often stated that it seems only necessary to cite the most recent case, *Dean v. State*, 205 Md. 274, 107 A. 2d 88, where it was pointed out that the judge passing upon the application may give consideration to the special knowledge and experience of police officers, and that probable cause is less than certainty or proof. The fact that the described man had in his possession, and threw away, a slip of paper that showed on its face a lottery operation, plus the evidence of a subsequent "pick-up" of an envelope and another object, was a sufficient showing of probable cause under the circumstances. The search warrant combined directions to search the man and the automobile. Nothing was found on the man, but lottery tickets were found in the automobile. We have held that such directions are separable. *Pegram v. State*, 203 Md. 567. Here the affidavit stated facts from which it could reasonably be inferred that the automobile was being used in a lottery operation.

The appellant contends that the circumstances surrounding the search of the automobile "compels the conclusion that the package of lottery tickets, claimed by the State's witnesses to have been subsequently found therein, was not therein when it was originally searched". The inference sought to be drawn is that the package was "planted". The testimony shows that on October 10, 1953, at about 1:30 P.M. Sergeant Heagherty, in company with Officers Cheeks, Moody and Rose, found the car, a two-door DeSoto convertible, parked on Mosher Street west of Pennsylvania Avenue. Davis was stand-

ing near the car and unlocked it for them. They searched his person and found nothing incriminating. In a ten-minute search, they found nothing incriminating in the car. Heagherty then said to Davis: "Willie, get in the car, we will drive down to the station house and we will make a more thorough search." Davis said: "all right, you are not going to find anything in the car, you can search all night, tear it apart, come on, I will go along with you." Davis drove, Heagherty sat next to him, Officers Moody and Cheeks in the back seat. Officer Rose followed in the police car. The car was parked on Johannsen Street near Brewer Street and searched again. Officer Rose came up and got in the back of the car. He said: "Sergeant, I think there is something under the front seat." Heagherty looked under the seat and "meshed in between an umbrella was this flat round package which contained 83 lottery slips". Davis said: "It is not my stuff." Some of the slips were dated October 5, most of them were undated.

The testimony for the accused was to the effect that on the morning of October 10, the witness Montgomery washed and cleaned the automobile. He "moved everything in there, washed the mats and there was an umbrella in there, taken it up, cleaned it out." He parked the car on Mosher Street, "left it open" and gave the keys to Davis, who was "over at the Casino". This was after 11 o'clock. Davis testified to the search on Mosher Street. He said the car was not locked, but he unlocked the trunk for the officers. He testified that the suggestion of a further search at the station-house came from Officer Rose. A further search near the station-house disclosed nothing. Officer Rose then came up with a bottle of soda in his hand. He got in back, and in a minute called to the Sergeant to look under the front seat. It was possible to see through from back to front, and *vice versa;* there were no obstructions except the umbrella. Davis denied that the slips were his, or that he was in the lottery business, although he was non-committal when charged by the Sergeant with being a "pick-up" man and

admitted to some prior convictions for gambling offenses. He intimated that Officer Rose had a grudge against him, arising out of a prior incident when he refused to submit to a search without warrant. When asked by the court if he meant to indicate that Officer Rose placed something in the car, he said: "I am not indicating anything."

Called in rebuttal, Officer Rose testified that he found the package under the front seat when he "started to take out the floor mat, and as I did I was running my hand along as I was pulling out the cushion which was joined together under the seat." He also testified: "The first time I came in contack with the umbrella was when I reached under the seat at Johannsen Street * * *. At the time I moved the umbrella and also struck the package. * * * the bottom of the seat is built low to the floor board * * *." He denied that he had suggested a further search to Sergeant Heagherty. He did not leave the police car between the time he entered it at Mosher Street and the time he parked it on Johannsen Street. Officer Moody had brought their lunch in the police car and that is where he got the soda. He had seen the accused on several previous occasions but did not remember ever trying to search him before.

At the conclusion of the testimony the trial court remarked: "If I believe the State's witnesses I have got to convict. * * * If I believe Davis's story then I think it necessarily follows that it had to be put there by somebody else. Frankly I see no reason why I shouldn't accept the State's evidence." Obviously, the court as the trier of facts had to make a choice between the State's theory that the package was there all the time, but overlooked in the first search, and the defense's theory that it was "planted" by the police immediately prior to its discovery. Counsel for the appellant argue the unlikelihood that four officers, in the first search, would fail to find it. But Sergeant Heagherty testified that the front seat was low, the area beneath it was dark, and that he did not feel the umbrella when he reached under the seat, although it was undoubtedly there. Officer Rose

also testified that the seat was low and his detailed explanation of the discovery tends to support the State's theory. It is argued that the absence of Officer Rose afforded an opportunity to procure and "plant" the package, although there was no direct evidence that he did. In the last analysis, the question is one of credibility, and the trial judge had the opportunity to see and hear the witnesses, which we lack. We cannot hold that the trial court was clearly wrong under the circumstances. Cf. *Glickfield v. State*, 203 Md. 400, 407, and *Edwards v. State*, 198 Md. 132, 151.

*Judgment affirmed, with costs.*