113 N.J. Super. 302 (1971)
273 A.2d 617
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE GILLMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1971.
Decided February 9, 1971.
*303 Before Judges GOLDMANN, LEONARD and MOUNTAIN.
Mr. Donald M. Weitzman argued the cause for appellant (Messrs. Glucksman and Weitzman, attorneys; Mr. Weitzman, of counsel and on the brief).
Mr. Bruce P. Miller, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney; Mr. Miller, on the brief).
The opinion of the court was delivered by MOUNTAIN, J.A.D.
Defendant appeals from a conviction of having violated N.J.S.A. 54:40A-32, which forbids transporting unstamped cigarettes on the public highways unless in possession of invoices or delivery tickets.
*304 On March 3, 1967 defendant was arrested by the Livingston Township police and shortly thereafter charged with a violation of the statute mentioned above. At the time of his arrest he was driving a Lincoln sedan to which was attached a trailer. The Livingston police had received information from two New York detectives, who had trailed defendant's car from North Carolina, that he was carrying a large quantity of unstamped cigarettes. Actually 3,003 cartons were discovered in the trailer and seized as contraband.
A hearing was held on defendant's motion to suppress and the motion was denied. A later application to reconsider the motion was also denied. Defendant stood trial before the municipal magistrate and was convicted. His conviction was affirmed by the Essex County Court.
Although a number of issues are raised on appeal, defendant's chief argument is concerned with the validity of the search warrant which issued shortly after his apprehension. It was as a result of the execution of this warrant that the contraband articles were discovered.
Probable cause for the issuance of the warrant must rest upon the testimony of Livingston Township detective Albert Fachet. His sworn statement was to the effect that two out-of-state detectives advised him that the vehicle, which they accurately described, had proceeded from North Carolina to a probable terminal point in New Jersey and that it contained contraband cigarettes. He had also been told  or knew  that the name of the operator of the car was George Gillman who was said usually to carry a gun in his car.
Acting upon this information, he spotted the car and in conjunction with other law enforcement officials followed it and stopped it, ostensibly for failing to have a stop light. Defendant, then driving the car, was unable to produce any registration for the trailer. Upon being requested to allow the officers to inspect it, he declined to open the trailer door.
Defendant first claims the warrant to have been improperly issued because Detective Fachet's statement did not set forth in detail the ultimate source of all the information recounted.
*305 As has been stated, "* * * no mathematical formula exists for application either by a trial or appellate court in deciding whether a search warrant was supported by probable cause. Each case depends upon a sensitive appraisal of the circumstances shown to the issuing judge." State v. Kasabucki, 52 N.J. 110, 117-118 (1968).
It is important to note that the information contained in the detective's sworn statement consisted in part of his own knowledge and observations and in part of information supplied to him by other law enforcement officers. Information coming from law enforcement colleagues should be entitled to greater credence than knowledge supplied by an informer who lurks in or near the underworld. The courts have sensibly agreed that where information is so imparted by another law enforcement officer, it is to be received with benevolent assumptions not appropriate to information offered by a typical informer, generally of the criminal class, who has reward in mind. This point was noted in State v. Kasabucki, above, where the information was received from the First Deputy Commissioner of the New York City Police Department. The rule has been followed elsewhere.
The controlling principle seems to be that it is not necessary for the officer making the arrest to know of the reliability of the informer or to be, himself, in possession of information sufficient to constitute probable cause provided that he acts upon the direction of or as a result of communication with a superior or brother officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest. [People v. Horowitz, 21 N.Y.2d 55, 286 N.Y.S.2d 473, 233 N.E.2d 453 (Ct. App. 1967)]
See also People v. McKiernan, 56 Misc.2d 845, 290 N.Y.S. 2d 976 (Cr. Ct. N.Y. City 1968); People v. Smith, 31 App. Div.2d 863, 297 N.Y.S.2d 225 (App. Div. 1969). In Mullaney v. State, 5 Md. App. 248, 246 A.2d 291, 299 (Ct. Spec. App. 1968), it was observed,
Without question, the observations of fellow law enforcement officers constitute a reliable basis in the assessment of whether probable *306 cause to arrest exists. [Citations omitted] Equally well settled is the proposition that probable cause to arrest may be based on information collectively within the knowledge of the police.
Indeed the Supreme Court of the United States has noted its approval of the practice of incorporating the results of the observations and investigation of other law enforcement officers when making application for a search warrant. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, 690 (1965).
We are satisfied as to the soundness of this rule and as to its applicability here.
Defendant further contends that the later discovery that certain of the statements contained in the sworn testimony which formed the basis for the issuance of the warrant were incorrect should constitute an independent basis for striking down the search warrant. In the first place none of the alleged "false statements" were especially material and each of them can probably be explained. They do not suggest purposeful falsification. In any event the rule in New Jersey would appear to preclude this kind of attack, which, where found elsewhere, rests upon statute. There is no legislation of this sort in our State. Furthermore R. 3:5-7(d) states that,
In the absence of bad faith, no search or seizure made with a search warrant shall be deemed unlawful because of technical insufficiencies or irregularities in the warrant or in the papers or proceedings to obtain it, or in its execution.
An examination of the record amply sustains the decision of the trial judge from the attack that his findings were against the weight of the evidence.
Finally it is urged that N.J.S.A. 54:40A-32 is unconstitutional as in violation of the Commerce Clause and as an intrusion upon a field which has been entirely pre-empted by federal legislation. Such is clearly not the case. The statute in question, whether viewed as an exercise of the police power of the State or as an exercise of the implied *307 right to protect the State's power to raise revenue, is constitutional. Precisely the same argument was directed to an almost identical statute in State v. Sedacca, 252 Md. 207, 249 A.2d 456 (Ct. App. 1969). There the court found ample justification for sustaining its constitutionality. We adopt the reasoning there set forth and reach a like result.
The conviction is affirmed.