STATE of Arkansas *v.* Arthur Jerome BROADWAY

CR 80-16                          599 S.W. 2d 721

Supreme Court of Arkansas

Opinion delivered June 9, 1980

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty. Gen., for appellant.

*McArthur & Lassiter, P.A.*, for appellee.

FRANK HOLT, Justice. The state brings this interlocutory appeal from the trial court's granting of the appellee's motion to suppress certain evidence. Ark. Rules of Crim. Pro., Rules 36.10 and 16.2 (d) (1977). The sole issue presented is whether the trial court erred in ruling that the evidence, marijuana, be suppressed due to an invalid nighttime search warrant.

The facts and circumstances surrounding the issuance of the search warrant are not in dispute. The facts constituting probable cause in support of the affidavit state that, based on police file reports of appellee's activities and information received about a purchase in appellee's home the day before the search from a proven confidential informer, police officers arranged a "controlled buy" at appellee's home. This informant purchased a quantity of marijuana from the appellee between 5 and 7 p.m. Shortly thereafter, the two police officers, who observed the informant enter the premises and leave, typed an affidavit and filled in the blanks of a search warrant authorizing a search of appellee's home. They took the completed instruments to a judicial officer's residence for his approval. After the police officers were sworn by him, they signed the affidavit and the judge signed the search warrant.

The affidavit, after enumerating the above asserted facts surrounding the "controlled buy," ended with this conclusory statement:

> Having found reasonable cause to believe that the substance described herein could be removed unless the search is conducted immediately, you are hereby commanded to search the above described premises of property at anytime of the day or night.

The search warrant, a printed form, contained this identical language as a standard paragraph, except it used the word "probable" rather than "reasonable." The warrant was issued based solely on the affidavit. The search was conducted at 9:15 p.m. that evening. Five individuals, including the appellee, who were engaged in a dice game, attempted to leave the room or premises. Marijuana was seized, which was concealed on appellee's person and in his bedroom. There

was no evidence of the use or sale of the marijuana.

A motion to suppress shall be granted only if the court finds that a violation is substantial or contrary to the federal Fourth Amendment or Art. 2, § 15, of our state constitution. *Harris* v. *State*, 262 Ark. 506, 558 S.W. 2d 143 (1977); and Rules of Crim. Proc., Rule 16.2 (1977). Even so, penal statutes or rules are to be strictly construed in favor of the individual. *Austin* v. *State*, 259 Ark. 802, 536 S.W. 2d 699 (1976). Stated in another way, the constitutional guarantee against unlawful search and seizure must be construed in favor of the individual. *Lowery* v. *United States*, 128 F. 2d 477 (8th Cir. 1942). In *Harris* v. *State*, 264 Ark. 391, 572 S.W. 2d 389 (1978), we said:

> Good cause must exist and be found by the issuing judicial officer to exist to authorize entry into a citizen's privacy in the nighttime. This is a safeguard justified by centuries of abuse. . . .

> The forms and procedure are quite elementary, the adherence to which will save everyone concerned a good deal of time, money, and sometimes, anguish.

The state, in support of its position, cites numerous federal cases to justify nighttime searches in drug related cases pursuant to a federal statute or rule. Here, however, we are interpreting our own recent rules on this subject. Rules of Crim. Proc., Rule 13.1 (d) (1977), authorizes the judicial officer to issue a search warrant when he believes reasonable cause exists for the issuance based upon the proceedings before him. Rule 13.2 (c) provides, however, that a search warrant shall be executed between the hours of 6 a.m. and 8 p.m. or in the daytime. There are only three exceptions to this restriction. The pertinent one here is that "the objects to be seized are in danger of imminent removal."

The affiants, and not the court, "found reasonable cause" existed for an immediate search since the substance "could be removed." They then "commanded" themselves to make the search at anytime during the day or night. There is no factual basis in the affidavit to support a nighttime search

except this conclusory finding and self-command. An affidavit should speak in factual and not mere conclusory language. It is the function of the judicial officer, before whom the proceedings are held, to make an independent and neutral determination based upon facts, not conclusions, justifying an intrusion into one's home. At the suppression hearing, the state properly took the view that the conclusory language in the affidavit was a mistake and neither added nor detracted from it. Admittedly, this clause should appear only in the search warrant. It is undisputed that except for the judicial officer's signature, address, and date, the warrant was completely filled in by the affiants when it was submitted to the judge for his signature. The record reflects no testimony before the judicial officer to support the nighttime search. The affidavit itself reflects the existence of marijuana in appellee's house during the preceding day. Further, the affiants' conclusory language is vastly different from the sworn testimony in *Harris* v. *State*, 262 Ark. at 509, supra, that "evidence [murder weapon] . . . might be disposed of . . ." We cannot construe "could be removed" to convey the meaning that the controlled substance was in "danger of imminent removal," which is required to justify a nighttime search.

In the circumstances, we must agree with the trial court that there was insubstantial compliance with the legal requirements for a nighttime search of appellee's home.

Affirmed.

FOGLEMAN, C.J., and HICKMAN and STROUD, JJ., dissent.

JOHN A., FOGLEMAN, Chief Justice, dissenting. I thoroughly disagree with the majority and the trial judge on the suppression of the marijuana in this case. We should approach this question, as well as all other questions pertaining to the suppression of evidence seized as the result of a search, recognizing that it is only unreasonable searches that are prohibited by Amendment Four to the United States Constitution. *Wickliffe* v. *State*, 258 Ark. 544, 527 S.W. 2d 640. We should also never lose sight of the fact that the United States Supreme Court has consistently maintained its position that the primary, if not sole, purpose of the exclusionary

rule is to deter illegal police activity. From the inception of the rule in *Weeks* v. *United States*, 232 U.S. 383 34 S. Ct. 341, 58 L. Ed. 652, LRA 1915 B 834, Ann. Cas. C 1915, 1177 (1914), the court has abided by this reasoning. *Elkins* v. *United States*, 364 U.S. 206, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960); *Mapp* v. *Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, 84 ALR 2d 933 (1961); *United States* v. *Calandra*, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974).

Because of the decided preference for officers to act pursuant to a warrant issued by a magistrate, rather than upon their own determinations of probable cause, the courts should not discourage police officers from submitting the question to a judicial officer by acting from a hypertechnical viewpoint rather than a realistic and common sense one. *United States* v. *Ventresca*, 380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965). See also, *State* v. *Lechner*, 262 Ark. 401, 557 S.W. 2d 195; *Baxter* v. *State*, 262 Ark. 303, 556 S.W. 2d 428. The preference is so strong that less persuasive evidence than would support a warrantless search will justify the issuance of a search warrant. *Aguilar* v. *Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). When a search is based upon a warrant issued by a magistrate, reviewing courts should accept evidence of a less judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant, unless the magistrate acted only as a rubber stamp for the police. *Aguilar* v. *Texas*, supra. We should always remember that the burden is upon one moving to suppress evidence to establish that his Fourth Amendment rights were violated by a search and seizure. *Rakas* v. *Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), reh. denied, 439 U.S. 1122, 99 S. Ct. 1035, 59 L. Ed. 2d 83. Although this burden is easily met by the mere showing that the search was made without a warrant, it remains upon the attacker when it is based upon a search pursuant to a warrant. *Prichard* v. *State*, 258 Ark. 151, 523, S.W. 2d 194; *Albright* v. *Karston*, 206 Ark. 307, 176 S.W. 2d 421.

We have adopted a common sense approach to suppression of evidence in Rule 16.2, Arkansas Rules of Criminal Procedure, Vol. 4A, Ark. Stat. Ann. (Repl. 1977). A motion to suppress is to be granted *only* if the court finds the violation

upon which it is based is substantial, or if otherwise constitutionally required. *Lipovich* v. *State*, 265. Ark. 55, 576 S.W. 2d 720; *Pridgeon* v. *State*, 262 Ark. 428, 559 S.W. 2d 4; *Brothers* v. *State*, 261 Ark. 64, 546 S.W. 2d 715. On the question of nighttime search pursuant to a warrant, the violation must be substantial, for their is no constitutional mandate for the exclusion of evidence seized pursuant to a warrant commanding a nighttime search. In determining whether a violation is substantial, the court must consider all the circumstances, including:

> (i) the importance of the particular interest violated;
> (ii) the extent of deviation from lawful conduct;
> (iii) the extent to which the violation was willful;
> (iv) the extent to which privacy was invaded;
> (v) the extent to which exclusion will tend to prevent violations of these rules;
> (vi) whether, but for the violation, the things seized would have been discovered; and
> (vii) the extent to which the violation prejudiced the moving party's ability to support his motion, or to defend himself in the proceedings in which the things seized are sought to be offered in evidence against him.

It should be noted that in comment I to Rule 16.2, a motion to suppress may be granted if the warrant was executed at a time not authorized in the warrant. Nothing is said about the absence of a specific finding of fact. Conceding that we have recognized that restriction upon nighttime searches is important, and that disregard of them is an invasion of privacy which should normally be avoided, I submit that the deviation here from lawful conduct is miniscule, if existent at all, that there was no willful violation, and that the exclusion would tend to increase, rather than prevent, violation of the rules. The vital matters, from a constitutional standpoint, are that the warrant be issued upon probable cause, supported by oath or affirmation, and that it particularly describe the place to be searched and the person or thing to be seized. *Harris* v. *State*, 262 Ark. 506, 558 S.W. 2d 143.

In *Harris* v. *State*, supra, we held that there was no substantial violation of the defendant's rights because of a night-

time search pursuant to a warrant which did not contain a recitation that it be executed between the hours of 6:00 a.m. and 8:00 p.m. It was argued that no exigent circumstances justifying a nighttime search were shown in the affidavit. The only statement in the affidavit as to the need for a nighttime search was that the evidence of the crimes under investigation might be disposed of. We found no substantial violation of the rights of the accused. We said there that the magistrate's actual issuance of the search warrant more positively established his finding of reasonable cause than the insertion of a conclusory finding to that effect would have. *Harris* v. *State*, 264 Ark. 391, 572 S.W. 2d 389, cited and relied upon by the majority is not a departure from other decisions by this court on suppression of evidence since the adoption of the Rules of Criminal Procedure. The reversal in *Harris* was not based upon the statement quoted from the opinion. The trial judge had denied a motion to suppress in spite of his comment that there appeared to be a total disregard for the rules. Our reversal clearly stated:

> We find on review that the cumulative errors, omissions, and deficiencies in this search warrant and affidavit require us to conclude that the warrant must fail as legally insufficient.

> There were several flagrant deficiencies in the warrant and affidavit. ***

\* \* \*

> In summary, there were too many omissions, errors and deficiencies in this warrant and related to this search to give us any confidence in its correctness or regularity.

Among the flagrant errors were: the failure of the warrant to specify the place to be searched with the required specificity; no receipt was given for items seized, even though the authenticity of the items became a critical issue; the return on the warrant was invalid; the affidavit was admittedly in error in several regards. The warrant in *Harris*, unlike the warrant

here, contained no finding that it could be served day or night.

In my view, good cause for a nighttime search did exist in this case, and was found to exist by the issuing judge.

The affidavit in this case, made on December 5, 1978, at 8:30 p.m., contains the following information critical to the issuance of a warrant for a nighttime search:

1. The affiants were detectives of the Little Rock Police Department Narcotics Detail.

2. The place to be searched was a one-story white wood frame residence occupied by appellant, who, according to information received by them on December 4, 1978, from a reliable confidential informant, was selling marijuana there.

3. That the reliable confidential informant had been present and observed appellant sell marijuana.

4. On the date of the affidavit, the reliable confidential informant, after it had been established that he had no narcotics in his possession, was furnished with money by the affiants, entered the place described and returned directly to the affiants and delivered to one of them a quantity of a green vegetable substance, which was shown to be marijuana by a field test.

5. The informant stated that the substance he delivered to the detective had been retrieved by appellant from the residence.

6. The narcotics unit files contain reports that stated that appellant was involved in the sale of marijuana in the Little Rock area.

It also communicated the belief that an immediate search was necessary by ineptly including a statement more appropriate to a form of warrant to be issued for a nighttime search. That statement was:

Having found reasonable cause to believe that the substance described herein could be removed unless the search is conducted immediately, you are hereby commanded to search the above described premises of property at anytime of the day or night.

The warrant was not a model form either, but it contained a finding that the issuing judge had reason to believe that a controlled substance (marijuana) was being concealed and ordered a search of the structure at anytime of day or night. The next to the last paragraph in the warrant was identical in wording to the paragraph from the affidavit quoted above.

In the absence of bad faith, no search or seizure made with a warrant should be deemed unlawful because of technical insufficiencies or irregularities in the warrant or in the papers and proceedings to obtain it. *State* v. *Gillman*, 113 N.J. Super. 302, 273 A. 2d 617, 46 ALR 3d 1337 (1971). Only by a hypertehcnical and hypercritical view of this affidavit and warrant and an overextension of the exclusionary rule can it be said that the requirements for a nighttime search had not been met or that the violations of the required standards were substantial enough to require suppression of the evidence for violation of appellant's constitutional rights. Any defects are procedural and there has been no violation of Broadway's substantive rights. See *United States* v. *Searp*, 586 F. 2d 1117 (6 Cir.), cert. den. 440 U.S. 921, 99 S. Ct. 1247, 59 L. Ed. 2d 474 (1979).

I sharply disagree with the majority's statement that there was no factual basis for a nighttime search, with or without the clause it discards as a "conclusory finding and self-command." That clause should be treated as the clumsy work of a police officer who was not a legal technician. I also take issue with the majority's posture that only one of the exceptions to the "daytime" requirements is pertinent. In my opinion, the exception, to be applied when the warrent can only be successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy, is also pertinent.

The only limitations upon a nighttime search are stated

in Rule 13 (c). It simply requires that the issuing judicial officer, by appropriate provision in the warrant, *authorize* its execution "at any time, day or night" upon a finding by the judicial officer of reasonable cause to believe that:

(i) the place to be searched is difficult of speedy access; or

(ii) the objects to be seized are in danger of imminent removal; or

(iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy.

Nothing in the rules requires that the finding of reasonable cause be stated in the warrant. This is in keeping with the manner in which the issuance of search warrants has always been treated. The very issuance of a search warrant is itself an adjudication by the issuing magistrate that probable cause exists for the search sought to be made, or, in other words, it constitutes a finding by the issuing officer of the existence of the grounds required for its issuance. *Chruscicki* v. *Hinrichs*, 197 Wis. 78, 221 N.W. 394 (1928). We have held that when a search warrant is regular on its face (and this one is) it is presumed, in the absence of proof to the contrary, that all things essential to its validity were done before it was issued. *Albright* v. *Karston*, 206 Ark. 307, 176 S.W. 2d 421. A recital in a search warrant that the issuing judge is satisfied there was reasonable cause is a sufficient finding of reasonable cause. *State* v. *Blumenstein*, 186 Wis. 428, 202 N.W. 684 (1925). A formal finding a probable cause is not even essential, if the proof on which it was based is sufficient. *Glodowski* v. *State*, 196 Wis. 265, 220 N.W. 227 (1928). We are here dealing with probable or reasonable cause in considering authorizations for a nighttime search. The issuance of a warrant for a "day or night" search and the recitals it contains should have the same effect and carry the same presumptions as the issuance of any search warrant, insofar as probable or reasonable cause determinations are concerned.

The burden was upon appellee to show that there was no reasonable cause for the issuing judge to believe that the re-

quirements for a search, day or night, existed. I submit that he failed.

A judge is not required to take leave of his common sense and ignore matters of common knowledge in issuing search warrants. Jurors are instructed that they are not required to set aside their common knowledge in considering evidence. AMI (Civil 102). Judges should not do so, either. See *Cannon v. State*, 265 Ark. 270, 578 S.W. 2d 20.

In judging probable cause, issuing magistrates are not to be confined by niggardly limitations or restrictions on use of their common sense and their determination should be given great deference by reviewing courts. *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). The Fourth Amendment does not prevent the neutral and detached magistrate from drawing the usual inferences which reasonable men draw from evidence; it only limits police officers engaged in the enterprise of ferreting out crime in making those judgments. *Johnson v. United States*, 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948). The probabilities we deal with in probable cause determinations are not technical; they are the practical and factual considerations of everyday life upon which reasonable and prudent men, not legal technicians, act. *Brinegar v. United States*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949).

In determining whether probable cause for issuance of a search warrant exists, the magistrate may rely upon all reasonable inferences of which the facts and circumstances stated in an affidavit are reasonably susceptible, in the light of his own background of experience. *United States v. Daniels*, 10 F.R.D. 225 (D.C., N.J., 1950); *United States v. Melville*, 309 F. Supp. 829 (S.D., N.Y., 1970); *Irby v. United States*, 314 F. 2d 251 (D.C., Cir.), cert. den. 374 U.S. 842, 83 S. Ct. 1900, 10 L. Ed. 2d 1064 (1963). See also, *Dean v. State*, 205 Md. 274, 107 A. 2d 88, 48 ALR 2d 1096 (1954). The affidavit must be interpreted in accordance with the dictates of common sense and not in a hypertechnical manner. *United States v. Melville*, supra.

We have resorted to common knowledge of the process of

distillation of ardent spirits and of the fact that banks deal only in money when giving credit to their depositers, in determining the sufficiency of indictments. *Hodgkiss* v. *State*, 156 Ark. 340, 246 S.W. 506; *Gurley* v. *State*, 157 Ark. 413, 248 S.W. 902. We looked to common knowledge that non-intoxicating liquors could be bought anywhere in 1925 in finding the evidence sufficient to support a conviction for selling intoxicating liquors on testimony referring only to "liquor," in *Griffin* v. *State*, 169 Ark. 342, 275 S.W. 665, and that all fruit jars look alike, in holding the evidence insufficient on a charge of manufacturing fermented liquors in *Wald* v. *State*, 183 Ark. 766, 38 S.W. 2d 307. We said that it was common knowledge that civic organizations and newspapers put on in-intensive drives to encourage people to vote in holding that the evidence was insufficient to support a charge of inducing fraudulent ballots in an election. *Williams* v. *State*, 222 Ark. 458, 261 S.W. 2d 263. In considering admissibility of evidence, we resorted in 1937 to common knowledge that many of the "hightest" gasolines were colored red. *Glover* v. *State*, 194 Ark. 66, 106 S.W. 2d 82. We have also considered well-known habits and courses of conduct. We said that it was a matter of common knowledge that many of the most atrocious and deliberate crimes are committed by persons more or less under the influence of intoxicants and that, in many instances, the intoxicant is used to supply the necessary fortitude to commit the criminal act. *Murry* v. *State*, 209 Ark. 1062, 194 S.W. 2d 182. We also have considered it to be common knowledge that many persons who fall asleep in an automobile with the engine running and the window glass up have been asphyxiated when the exhaust system or the heater of the vehicle is defective. *Berry* v. *City of Springdale*, 238 Ark. 328, 381 S.W. 2d 745, 8 ALR 3d 925.

There is absolutely no reason why a judge, in considering whether there is reasonable cause to believe a nighttime search is permissible, should not draw inferences from the facts and circumstances disclosed by the affidavit and other recorded information given him under oath in the light of his own common knowledge. It is proper for a judge issuing a warrant for a nighttime search to take notice of the fact that the articles named in the warrant (whiskey, beer, etc.) were readily destroyable or removable. *People* v. *Horton*, 32 A.D. 2d

707, 300 N.Y.S. 2d 15 (1969); *People* v. *DeLago*, 16 N.Y. 2d 289, 266 N.Y.S. 2d 353, 213 N.E. 2d 659, cert. den. 383 U.S. 963, 86 S. Ct. 1235, 16 L. Ed. 2d 305 (1966). The courts, when the question has arisen, have, in other cases, relied upon common knowledge, or accepted as fact, that expeditious action is appropriate when controlled substances are involved, because of the fact that they are so susceptible to removal or immediate disposal. See e.g., *Ker* v. *California*, 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1962). It is also proper to draw an inference from the well-known fact that traffic in controlled substances is more prevalent at night than in the daylight hours. The fact that a sale had taken place at night in a private residence is significant on the question of good cause for the service of a warrant in the nighttime. *People* v. *Govea*, 235 C.A. 2d 285, 45 Cal. Rptr. 253 (1965).

The majority has concluded that "the marijuana" had been at Broadway's house for two days. This inference was drawn from the disclosure that the informant had seen marijuana there on two different days. Obviously, he did not see the same marijuana, nor did he purport to know that the two sales of which he had knowledge came from the same "stock" or supply, or that a supply was on hand during an intervening twenty-four hour period. It would be unreasonable, however, to conclude that the "controlled buy" by the informer exhausted the stock on the night of the purchase; the probabilities are to the contrary. See *Hignut* v. *State*, 17 Md. App. 399, 303 A. 2d 173 (1973).

The affidavit's disclosure that the affiants were members of the Little Rock Police Department's Narcotics Unit certainly justified the inference that they were possessed of special knowledge of conditions and practices of those who deal in controlled substances. The experience and special knowledge of the police officers who are applying for a warrant are among the facts which may be considered by the issuing magistrate. *State* v. *Harris*, 256 Wis. 93, 39 N.W. 2d 912 (1949); *Wood* v. *State*, 185 Md. 280, 44 A. 2d 859 (1945); *Bratburd* v. *State*, 193 Md. 352, 66 A. 2d 792 (1949); *Mezzatesta* v. *State*, 53 Del. 145, 166 A. 2d 433 (1960); *Davis* v. *State*, 205 Md. 552, 109 A. 2d 774 (1954).

Not only did the narcotics officers have reason to believe that an immediate search was necessary, the issuing judge had a basis for drawing that inference from the facts and circumstances stated in the warrant viewed in the light of common knowledge that controlled substances are, like intoxicating liquors, susceptible of ready destruction or removal and that traffic in them is more prevalent at night than in the daytime. It was not unreasonable for the magistrate to infer that it was essential to a successful execution of the warrant that it be executed promptly after the "controlled buy."

I would reverse the trial court's suppression of the evidence.

I am authorized to state that Mr. Justice Hickman and Mr. Justice Stroud join in this opinion.