## State *vs.* Walter W. Blackburn.

*Homicide—Murder—Malice—Alibi—Motive—Confessions; Indirect—Acquiescence—Evidence—Reasonable Doubt.*

1. Murder of the first and of the second degree, and the lesser grades of homicide defined.

2. Malice defined.

3. Circumstantial evidence defined.

4. Reasonable doubt defined.

5. On a charge of murder where the fact of killing as charged is shown by the prosecution, unaccompanied by circumstances of justification, excuse or mitigation, the law presumes malice, until the contrary is shown, yet the legal presumption goes no further in such a case than that the killing is murder of the second degree under our statute. Before a verdict of murder of the first degree can be rendered, it must be shown that the prisoner killed the deceased with the deliberate purpose and formed design to take his life.

6. Whenever the imputed guilt of the prisoner appears to the jury to be doubtful, the absence of any testimony in proof of a motive for the commission of the crime is a circumstance which the jury may consider, in connection with all the evidence of the case, in favor of the prisoner's innocence. But whenever upon the general evidence the jury are satisfied of the guilt of the accused, notwithstanding the absence of any testimony in proof of such a motive, then such absence is immaterial.

7. There are two kinds of extra-judicial confessions; viz.: direct confessions of guilt and indirect confessions; which latter, like admissions in civil cases, may be inferred from the conduct of the prisoner and from his silent acquiescence in the statements of others respecting himself and made in his presence. But acquiescence, to have the effect of such a confession, must exhibit some act of the mind and amount to voluntary demeanor or conduct of the party. And if it is acquiescence in the conduct or the language of others, it must plainly appear that such conduct was fully known, or the language fully understood by the party, and his mind and attention sufficiently directed to its purport and importance before any inference can be drawn from his passiveness or silence. The circumstances, too, must be not only such as afford him the opportunity to act or speak but such also as would properly and naturally call for some act on or reply from men similarly situated.

(*February* 5, 1892.)

Judges Houston, Grubb and Cullen sitting.

*These four cases which follow, though not recent, are considered of sufficient importance to include in this report.

*John Biggs*, Attorney-General, and *Victor B. Woolley* for the State.

*Herbert H. Ward* for the prisoner.

Court of Oyer and Terminer for New Castle County, held at Wilmington, in February 1892.

INDICTMENT for murder of the first degree, (No. 30, November Term, 1891).

GRUBB, J., charging the jury:

Gentlemen of the jury:—During six very arduous days you have attended here to the painful and pathetic story of the mysterious disappearance and death of a boy but eight years old.   During this trying period, you have; with great inconvenience  and discomfort to yourselves, doubtless, discharged faithfully.one of the highest duties of citizenship—the duty of standing between your fellow citizen who is accused, and your State, which is his prosecutor, and determining whether or not he is guilty of the crime charged against him, before the punishment, which he will justly deserve if found guilty, shall be inflicted upon him for destroying an individual human life and menacing the public safety:   You have been selected for the purpose of determining whether the prisoner now on trial is the person who caused the death in question.   You are not here to ascertain—in case you shall find he is not that person—what other person is the real criminal.   That is not the duty of this jury, but of the public authorities.   Your duty is to discover, if you can, from the evidence produced from this witness stand—and from no other source whatsoever—whether or not the prisoner at the bar is the guilty person.   If you are morally certain that he is such, then you must convict him regardless of all other considerations; otherwise you must acquit him.

With these prefatory remarks, we will proceed to the con-

sideration of the law applicable to the case before you:

Walter W. Blackburn, the prisoner at the bar, stands charged in this indictment with murder of the first degree, for the wilful and felonious killing of Edward H. Gardner, with express malice aforethought, in the month of October, 1891, at Wilmington Hundred, within this County.

Under any indictment for murder of the first degree the jury may find the accused guilty of either murder of the first or second degree, or of manslaughter, according as the law and evidence may warrant, but unless they shall find him guilty of one of these three grades of felonious homicide, they must acquit him and render a general verdict of "not guilty." It therefore becomes necessary for the jury, in the present instance, to be sufficiently informed by the Court as to the definition and nature of murder and the distinctions between the two degrees thereof, as well as to the differences between these and the inferior grades of homicide.

Homicide is the killing of any human creature, and is of three kinds: justifiable, excusable, and felonious. The taking of human life is held to be justifiable when done in the execution of public justice, as where the proper public officer duly executes a criminal under lawful sentence of death; or in the advancement of public justice; or for the prevention of any atrocious crime attempted to be committed with force—of which examples need not here be given. Excusable homicide is that which is committed either by misadventure, or in self-defense. Homicide by misadventure is the accidental killing of another where the slayer is doing a lawful act unaccompanied by any criminally careless or reckless conduct. Homicide in self-defense is where one is assaulted upon a sudden affray, and, in the defense of his person, where certain and immediate suffering would be the consequence of waiting for the assistance of the law, and there is no other probable means of escape, he kills his assailant.

In the case now before you, the marks of mortal violence upon the deceased, if you believe the witnesses thereto, show an unlawful killing and there is no evidence showing any ground for the plea of self-defense,—much less of justification. Therefore

you cannot lawfully find that this is a case of either justifiable or excusable homicide.

Is it then a case of felonious homicide? Felonious homicide, at common law, is of two kinds; namely, manslaughter and murder; the difference between which consists principally in this, that in murder there is the ingredient of malice, whilst in manslaughter there is none; for manslaughter, when voluntary, arises from the sudden heat of passion, but murder from the wickedness and malignity of the heart. Therefore manslaughter is defined to be the unlawful killing of another without malice either express or implied and without premeditation. Manslaughter is either voluntary or involuntary. Voluntary manslaughter is where one kills another in the heat of blood, and this usually arises from fighting or from provocation. Involuntary manslaughter is where one in doing an unlawful act, not felonious nor tending to great bodily harm, or in doing a lawful act without proper caution or requisite skill, undesignedly kills another.

You will see at once that this is not a case of voluntary manslaughter; because there is no evidence of any provocation or heat of blood at the time of the killing of the deceased. Nor is it one of involuntary manslaughter, because the evidence of the brutal marks of violence upon him, if you believe it, shows that his slayer was doing an unlawful act tending not only to great bodily harm to the deceased, but to produce his death. If, therefore, you cannot lawfully render a verdict of manslaughter, it will be necessary for you to determine whether the killing of the deceased is murder.

Murder, which is one of the two kinds of felonious homicide, —manslaughter being the other—is where a person of sound memory and discretion, unlawfully kills any reasonable creature, in being under the peace of the State with malice aforethought either express or implied. The chief characteristic of this crime, distinguishing it from manslaughter and every other kind of homicide and therefore indispensably necessary to be proved, is malice prepense or aforethought. This term, malice, is not restricted to spite or malevolence towards the deceased in particu-

lar, but, in its legal sense, is understood to mean that general malignity and recklessness of the lives and personal safety of others which proceed from a heart void of just sense of social duty and fatally bent on mischief. Malice is implied by law from every deliberate cruel act committed by one person against another, no matter how sudden such act may be, for the law considers that he who does a cruel act voluntarily, does it maliciously. And whenever the act from which the death ensues, as proven by the prosecution, appears *prima facie* to have been committed deliberately, the law presumes that it was done in malice; and it is incumbent upon the prisoner to show from evidence, or by inference from the circumstances of the case, that the offense is of a mitigated character and does not amount to murder.

Under the statute law of this State there are two degrees of murder; namely: Murder of the first, and Murder of the second degree. The first is where the crime of murder is committed with express malice aforethought, or in perpetrating or attempting to perpetrate any crime punishable with death; and the second degree is where the crime of murder is committed otherwise and with malice aforethought implied by law. Express malice is proved by evidence of a deliberately formed design to kill another; and such design may be shown from the circumstances attending the act, such as the deliberate selection and use of a deadly weapon, knowing it to be such; a preconcerted hostile meeting, mutually agreed upon or notified and threatened by the prisoner, privily lying in wait; a previous quarrel or grudge; antecedent menaces; the preparation of poison or other means of doing great bodily harm to the deceased; or any other circumstances evidencing such deliberately formed design to kill. Implied or constructive malice is an inference or conclusion of law from the facts found by the jury; and among these, the actual intention of the prisoner becomes an important and material fact; for, though he may not have intended to take away life, or to do any personal harm, yet he may have been engaged in the perpetration of some other felonious or unlawful act from which the law raises the presumption of malice. It is the difference between express and

implied or constructive malice aforethought which distinguishes murder   of the first from murder of the second degree, except, however, that under our statute, murder of the first degree may be committed when the malicious killing is done in perpetrating. or attempting to perpetrate any crime punishable with death— as rape or arson is in this State—although from such a felonious act malice is merely implied or presumed by the law.   Therefore murder of the second degree is held to be proved where it is not satisfactorily shown by the evidence submitted to the jury, that the killing was done with a deliberately formed design to take life, or in perpetrating or attempting to perpetrate any crime punishable with death, but is so shown that it was done suddenly, without justification or excuse, and without any provocation, or without provocation sufficient to reduce the homicide to the grade of manslaughter, or was done in perpetrating or attempting to perpetrate a felony (not capitally punishable,) or any unlawful act of violence from which the law raises the presumption of malice.

Having thus instructed you as to murder of the first and of the second degree, and the lesser grades of homicide, for your proper guidance in determining the guilt or innocence of the prisoner whom you have in charge, it is also proper to remind you that, as the law presumes every accused person to be innocent until he is proven guilty, the burden is upon the prosecution to prove beyond a reasonable doubt by competent evidence, every essential ingredient of the crime charged in this indictment, before the prisoner can be found guilty thereof.   But, on the other hand, every sane man is presumed to intend that which is the ordinary and natural consequence of his own wilful act.   Therefore on a charge of murder, where the fact of killing as charged in the indictment is shown by the prosecution, unaccompanied by circumstances of justification, excuse or mitigation, the law presumes that the homicide was committed with malice, and hence amounts to murder, until the contrary is shown, and consequently the burden is thereupon thrown upon the accused of disproving the malice and showing by evidence to the satisfaction of

the jury that the killing was not malicious, but was either justifiable or excusable homicide, or manslaughter.

But, for the reasons already stated, you cannot, in this instance, lawfully find that the killing of the deceased is either justifiable or excusable homicide, or manslaughter. So that, if, after a careful review of all the testimony before you, you shall be satisfied that the slayer of the deceased is guilty of a higher grade of homicide than manslaughter, it will then be your duty to determine from the evidence, whether the prisoner is guilty in manner and form as he stands indicted—that is, of murder of the first degree—or guilty only of murder of the second degree.

In considering the evidence, with a view to determining this question, you must be guided by the legal definition and nature of these two degrees of murder, and bear in mind the distinction between malice aforethought express and malice aforethought implied, as these have just been explained to you. And here, it is necessary also to inform you that, although when the fact of killing as charged in the indictment is shown by the prosecution unaccompanied by circumstances of justification, excuse or extenuation, the law presumes that the homicide was committed with malice until the contrary appears from the evidence produced at the trial, yet it goes no further than to imply malice, and therefore the legal presumption goes no further in such a case than that the killing is murder of the second degree under our statute. Wherefore, before a verdict of murder of the first degree can be lawfully rendered by the jury, it must be shown by the prosecution, that the prisoner killed the deceased with a deliberate purpose and formed design to take his life. Such deliberate purpose and formed design may exist only for a moment, but it must be shown by the facts and circumstances attending the homicide to actually exist, in order to prove that express malice aforethought, without the evidence of which, a conviction of murder of the first degree cannot be secured.

But before the prisoner can be found guilty of murder of either degree under this indictment, it is incumbent on the prosecution to prove to you, beyond a reasonable doubt, *first*, that

Edward H. Gardner died on or about October 15th, 1891; *second*, that his death was caused by the means and in the manner described in the said indictment, and *third*, that the prisoner, Walter W. Blackburn, is the person who committed the fatal act as alleged therein, and in this County. That Gardner was found dead on said day is shown by witnesses who have not been contradicted in this respect. And, unless you disbelieve the testimony of the Coroner's Physician, Dr. Smith, as well as of other witnesses, it has been satisfactorily proven that Gardner's death was caused by the means and in the manner described in the indictment. If, therefore, you shall be entirely satisfied from the evidence that these two essential facts have been satisfactorily established by the prosecution,—yet you will still have to be satisfied, beyond a reasonable doubt, from all the evidence on both sides before you, whether or not the prisoner is the person who caused the death of Gardner as alleged in this indictment. The question for you to determine, is not the general one, Who did it?, but the specific one, Did Walter W. Blackburn, the prisoner at the bar, do it? This is the real and essential question which you must solve by the evidence and answer by your verdict.

The prosecution contends that the prisoner is the person who caused the death of Gardner. This the prisoner denies; and endeavors to prove an *alibi* and other circumstances to disprove the testimony and contention of the State. So far as the testimony discloses, no human eye—save the perpetrator's—saw when, where, how or by whom this shocking homicide was committed. Consequently the case against the prisoner cannot be proved by direct and positive testimony, but rests solely upon what is called circumstantial or presumptive evidence. As you are aware, gentlemen of the jury, the fact in controversy to be proved in any trial will generally be attested by those who speak of their own actual and personal knowledge of its existence; or else it is to be inferred from other facts satisfactorily proved. In the former case, the proof rests upon our faith in the veracity, impartiality, opportunity for observation, accuracy of memory, etc., of those who speak of their own personal knowledge. In the

latter case, it rests on the same ground, with the addition of the experienced connection between the collateral facts thus proved and the fact in controversy. In the former case, the proof applies immediately to the *factum porbandum*, without any intervening process, and it is therefore called direct or positive testimony. In the latter case, as the proof applies immediately to collateral facts, supposed to have a connection, near or remote, with the fact in controversy, it is termed circumstantial and sometimes presumptive evidence; and it is from such facts, if unexplained by the prisoner where guilt is charged, that the jury may, or may not, deduce or infer, or presume his guilt according as they are satisfied, or not, of the natural connection between similar facts, and the guilt of the person thus connected with them. Circumstantial evidence is receivable in both civil and criminal trials. As crime is usually committed secretly, and often by crafty professional criminals, its use in criminal trials is even more necessary than in civil suits. For, if excluded by courts in criminal trials, the great majority of criminals, and especially the most skillful and dangerous ones, would escape punishment, and society would thus be deprived of adequate protection. Circumstantial evidence is adopted the more readily, on the one hand, in proportion to the difficulty of proving the fact by direct evidence, and, on the other because of the general ease with which it can be disproved, or with which other facts can be proved which are inconsistent with it, if it never really occurred.

But you must nevertheless remember, and most positively, that circumstantial evidence, to warrant a conviction, must be entirely satisfactory and of such significance, consistency and force as to produce conviction in the minds of the jury of the guilt of the accused beyond a reasonable doubt. As this Court has heretofore announced, the established rule on the subject is this: where the evidence is circumstantial, the jury must be fully satisfied, not only that the circumstances proved are consistent with the prisoner's having committed the act charged as constituting the crime, but they must also be likewise satisfied that the facts are such as to be inconsistent with any other rational conclusion

than that the prisoner was the guilty party. Proof beyond a reasonable doubt does not mean that the guilt of the accused, or any other fact, shall be established with the absolute certainty of a mathematical demonstration. Matters of fact are required to be proved merely to a moral certainty. To require more in dealing with human conduct and the ordinary affairs of life would be impracticable and therefore unreasonable. It is sufficient that any disputed fact relating to these shall be established by that amount of competent or appropriate evidence which ordinarily satisfies an unprejudiced mind beyond a reasonable doubt. The circumstances which will amount to this degree of proof can never be previously defined. The only legal test of which they are susceptible, is their sufficiency to satisfy the mind and conscience of a man of common sense and ordinary discretion; and so to convince him that he would act upon that conviction in matters of the highest concern and importance to his own interest. Reasonable doubt, in the legal sense, therefore, does not mean a vague, speculative or whimsical doubt, or uncertainty—nor a merely possible doubt—of the truth of the fact to be proved. In civil trials it is the duty of the jury to decide in favor of the party on whose side the weight of evidence preponderates, and according to the apparent probability of truth. But in criminal trials, because of the graver consequences of a wrong decision, the jurors are required to be satisfied, beyond any reasonable doubt, of the guilt of the accused, or it is their duty to acquit him. In civil cases it is sufficient if the evidence in the aggregate agrees with and supports the hypothesis which it is adduced to prove; but in criminal cases, it must be such as to produce a moral certainty of guilt and to exclude any other reasonable hypothesis than that of the guilt of the accused. In both cases a verdict may well be founded on circumstances alone; and these often lead to a conclusion more satisfactory than that produced by direct evidence

In this connection we will briefly refer to the law in respect to the proof of motive in criminal cases. Whenever upon the general evidence, the imputed guilt of the prisoner appears to the jury to be doubtful, the absence of any testimony in proof of a

motive for the commission of the crime charged, is a circumstance which the jury may consider in connection with all the evidence in the case, in favor of the prisoner's innocence. But whenever upon the general evidence, the jury are satisfied beyond a reasonable doubt, of the guilt of the accused, notwithstanding the absence of any testimony in proof of such a motive, then, in that case his guilt being already proved, such absence thereof is manifestly immaterial; for if actually produced in such a case, it could only operate as a corroborative circumstance.

Before concluding our instructions as to the law of this case, it is necessary to consider another matter. For the purpose of proving an implied confession of his guilt by the prisoner, evidence has been introduced by the State to show that, on certain occasions when charged by Mrs. Gardner with having killed her son, the prisoner failed to reply to, or deny this charge; and to show also that, when the prisoner's wife made a certain statement to Mrs. Gardner in the prisoner's presence, he did not make any response thereto. If you should believe that such charges and statements were really made in his presence, then you are entitled to learn from the Court what effect they should have, in contemplation of law, upon your minds in the consideration of this case. The law is well settled that the prisoner's extra-judicial confession, when the *corpus delicti* that is, the fact of death and that it was criminally caused, has not been otherwise proved, is not sufficient for his conviction. There are two kinds of extra-judicial confessions; namely: direct confessions of guilt, and indirect confessions; which latter, like admissions in civil cases, may be inferred from the conduct of the prisoner and from his silent acquiescence in the statements of others, respecting himself, and made in his presence. But acquiescence, to have the effect of such a confession, must exhibit some act of the mind, and amount to voluntary demeanor or conduct of the party. And whether it is acquiescence in the conduct or in the language of others, it must plainly appear that such conduct was fully known, or the language fully understood by the party, and his mind and attention sufficiently directed to its purport and impor-

tance before any inference can be drawn from his passiveness or silence. The circumstances too, must be not only such, as afforded him an opportunity to act or speak, but such also as would properly and naturally call for some action or reply from men similarly situated. Thus, for instance, if in this case you should believe that when the said statement and charges were made by his wife and Mrs. Gardner, his mind was so distracted by his shock or grief over the death of the boy, or by the prevailing exictement or confusion of the occasion, that he did not sufficiently note or comprehend the import of said charges or statements; or did not reply to them from a considerate desire not to have a controversy with the dead boy's mother in her then agitated and shocked condition; or for any other probable and adequate reason, then you should not regard his alleged silence as a tacit acquiescence or implied confession of his guilt. While confessions of guilt, when they are deliberate and voluntary, are among the most effectual proofs in the law, yet the evidence of verbal confessions—and, *a fortiori*, of such as are inferred from silent acquiescence—is to be received with great caution. The degree of credit due to them is to be estimated by the jury under the circumstances of each case.

And now, gentlemen of the jury, it becomes your duty, subject to the law as we have given it to you, to determine from the evidence before you whether or not the prisoner is the person who caused the death of Gardner, as charged in this indictment, That Walter W. Blackburn, the prisoner at the bar, is that person the prosecution contends is the only just and rational inference to be drawn from a careful and intelligent consideration of all the facts and circumstances proved by the credible and reliable witnesses in the case. In support of this contention, the State has sought to show, among other things, to your satisfaction the following circumstances (if you find we state them correctly): that between one and two o'clock on the afternoon of Wednesday, October 14th, 1891, Edward H. Gardner, then about eight years old went forth alive from his home and his mother's presence, and was found dead with marks of mortal violence upon him about

nine p. m. of the following day, Thursday, October 15th, concealed in a baggage car standing on the railroad track between Fourth and Fifth streets, in this City; that, about 9:45 p. m. on said Wednesday Mrs. Isabella Scott, when in the immediate locality of said baggage car, discovered a man carrying the body of a boy under suspicious circumstances, who escaped from her view when he saw her, and whom, as she testifies, she believes to have been the prisoner; that about 5:00 a. m. next day, Thursday, October 15th, the prisoner informed Mrs. Gardner, the boy's mother that he had seen the boy the previous afternoon and that he would find him for her if in town; that about 8:30 p. m. of said Thursday he met Harry Seaman at John J. Cook's store at 7th and Church Streets., and informed him and Cook that young Gardner, his own brother-in-law, was lost on the day before; that he had dreamed he saw blood on the railroad track or car and that he wanted a lantern; that he procured one, and, taking Seaman with him, went to the railroad, searched there and found the boy lying dead in a baggage car between Fourth and Fifth Streets (it being about where Mrs. Scott says she had seen the man carrying a boy the night before); that about 9:00 p. m., Mrs. Gardner was informed of his discovery and she, with her sons and the prisoner, went to the car and brought the boy's lifeless body to her home; that both at the car and at her home she accused the prisoner with having caused his death, and that he made no reply to these charges; that the prisoner's wife as the boy was carried into the house, exclaimed to Mrs. Gardner in his presence, "Oh Mom, I knowed this long ago, but Walter (the prisoner) told me not to tell you,"—to which she added that she did not know the boy was dead but that the prisoner had told her he would find the boy after a while,—and that the prisoner made no reply to this statement.

On the other hand, the prisoner denies that he is the person who caused Gardner's death, and, in order to disprove the theory and impeach the testimony of the prosecution and establish his innocence, has endeavored to prove by witnesses produced in his behalf before you, among other things, that he and the boy Gard-

ner were warm friends; that he did tell Mrs. Gardner on the same evening that she had made her charges against him, that he was not guilty of them, and thereupon charged Hinesly with the death of the boy for reasons then stated by him to her; that he had been talking with his sister about Hazel's previous assault upon young Gardner at the railroad cars, who had urged him to look for the boy among the cars in the same locality, before he fell asleep and had the dream about blood on the railroad track or cars; that it was after this dream and his sister's said suggestion that he sought a lantern and got Seaman to go with him among the cars until the boy was found in the baggage car which was close to the very locality where Hazel's previous assault had been made; that Mrs. Scott had never known or seen the prisoner prior to the moment when she saw, as she said, the man carrying the boy on Wednesday night, October 14th; that she had given conflicting descriptions of the man she said she saw carrying the boy that night, and that she had said other things discrediting her testimony; that the prisoner was at the Institute Hall landing outside the Firemen's ball room, from 9:00 until about 11:00 p. m., which period included the very time at which Mrs. Scott said she saw the said man carrying the boy between 9:30 and 9:55 o'clock that evening on the railroad, and, lastly, that the prisoner was seen by a succession of witnesses during the continuous period from the time the boy left home about 2:00 p. m. on Wednesday until the discovery of the boy's corpse in the baggage car about 9:00 p. m. on Thursday, and that therefore, he could not have been present at the killing of Gardner, or at the time his body was concealed in the baggage car where it was found, or when Mrs. Scott says she saw the man carrying the boy.

It is these opposing contentions and this conflicting testimony upon which you have to sit in judgment and reach a conclusion before you render your verdict. If, in this brief summary of the testimony offered on each side, we have erred in any respect, you will correct the error. Our purpose in referring to its general outlines only, is simply to aid you in your investigation, by directing your attention to the main line of inquiry;

leaving you to determine, as is your exclusive right and duty, not only what has been proved but also what credit, and weight you will give to it. In considering the testimony, if it is conflicting, you should reconcile it where that is possible, so as to harmonize it all; but where it is irreconcilable you must give credit to that portion which you shall believe to be most entitled to it and reject such as you may deem least worthy of credit, after due deliberation upon all the evidence.

It only remains for us to say, in conclusion, that if, after your thorough consideration of all the facts and circumstances proved on both sides in this case, you shall be satisfied beyond a reasonable doubt that the prisoner is the person who caused the death of the boy Gardner, as alleged in this indictment, then you are further to determine, subject to the law as we have explained it to you, whether or not the prisoner is guilty of murder of the first degree, or of a lesser grade of felonious homicide, and to render your verdict accordingly. But if, after such consideration of said facts and circumstances, you shall not be satisfied beyond a reasonable doubt that the prisoner is guilty of murder of the first degree, or of a lesser grade of felonious homicide, then you are to acquit him and render a verdict of "not guilty."

With these instructions, which are more specific and extended than is usual in ordinary trials, because of the exceptional features of this uncommon case, we commit it to you for your most careful and conscientious consideration. You have both a solemn and responsible duty to discharge, for not only the fate of the prisoner, but also the safety of this community depend upon your verdict.

Verdict, Not guilty.