JOHN J. MEZZATESTA and JAMES J. WILLIAMS, Appellants, v. THE STATE OF DELAWARE, Appellee.

(*December* 23, 1960.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*John Merwin Bader* for appellants.

*Max S. Bell, Jr.,* Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 30, 1960.

SOUTHERLAND, C. J.:

Acting under authority of search warrants, two state police officers entered and searched two apartments in the Clifton Park Apartments on the Edgemoor Road in New Castle County. Apartment 8, Building 81, was occupied by defendant Mezzatesta and Apartment 9, Building 92, was occupied by defendant Williams. On observing the Mezzatesta apartment through a partly opened door they saw the two defendants (and Mezzatesta's wife, Ann) processing "number slips", *i.e.*, papers evidencing or relating to bets in connection with lotteries. The defendants picked up some of the slips and attempted to flush them down the toilet.

A search of Williams' apartment yielded about $4,700 in currency and about $2,000 in coins, as well as some more number slips.

While under arrest, but not under questioning, Williams said to one of the officers: "Lieutenant, how about keeping Ann out of it. She is not in it. It is our business." Mezzatesta said nothing.

Three informations were filed. Each defendant was separately charged with being concerned in interest in lottery policy writing in violation of 11 *Del. C.* § 662, as well as with violations of § 661. Another information charged both with conspiracy to violate the lottery laws. They moved to suppress the evidence on the ground that the search warrants were

invalid. The Superior Court denied the motion. The three cases were tried together and a verdict of guilty was returned in each case. The defendants appeal.

Defendants raise several questions which may be conveniently dealt with in three groups.

### 1. Validity of the search warrants.

Article 1, Section 6 of the *Delaware Constitution, Del C. Ann.*, provides:

"The people shall be secure in their persons, houses, papers, and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation."

11 *Del. C.* § 2306 prescribes the statutory requirements for an application for a search warrant. It reads:

"The application or complaint for a search warrant shall be in writing, signed by the complainant and verified by his oath or affirmation. It shall designate the house or place to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house or place designated and shall recite the facts upon which such suspicion is founded."

The applications for the search warrants were made by the two police officers, and are in like form.

Paragraph 1 of the Williams affidavit avers under oath the officers have good reason to suspect that in Building 92, Apartment 9, "used as a residence by James J. Williams"

there are located papers, tickets, etc., used in connection with lottery policy writing.

This suspicion was based on information from the Wilmington Police Department that bets were being taken from certain specified shops in Wilmington to Williams' apartment.

Paragraph 2 specifies the offense. Paragraph 3 specifies the facts showing probable cause that an offense had been committed. On information received from the Wilmington Police Department that Apartment 9 of Building 92 was being used as a numbers bank by Williams, Mezzatesta, and others, the officers watched the building entrance on seven separate days. They repeatedly saw Williams and Mezzatesta enter and leave these buildings at or near two p.m. on these days. On one occasion Williams walked from Building 92 to Building 81 with a package in his hand. On other occasions near two o'clock p.m., operators of a Buick car carrying a package or a bag entered Building 92. Their behavior was furtive.

The significance of the time lies in the fact that numbers slips must be returned to the bank by two p.m. or shortly thereafter because the lucky number depends on racing results.

Finally, based on records furnished by the Wilmington Police Department, the officers averred that Williams had been arrested seven times and Mezzatesta six times for lottery policy writing.

The Mezzatesta affidavit was similar.

Taking the facts stated at their face value, as the judge who issued the search warrants was bound to do, we think that they sufficiently showed probable cause to believe that violations of the lottery laws were occurring at the premises described.

Defendants urge three objections.

█ First, it is said that there is no sufficient allegation specifying the owner or occupant of the premises, because that allegation appears only in Paragraph 1 of the application, which, defendants assert, is the "non-probative" part of the application. We can see no basis whatever for this asserted distinction between the three paragraphs of the affidavit. Read as a whole, the affidavit plainly designated the place to be searched and the occupant thereof.

Second, it is said that no evidentiary facts are set forth to substantiate the statement that Williams (or Mezzatesta) was the occupant of the premises. Probable cause, it is said, must be shown by facts, not conclusions.

█ This argument confuses the statutory requirement for a statement of the name of the occupant or owner with the constitutional requirement (spelled out by the language of the statute) that the application must state the facts upon which the suspicion of violation of law is founded. The constitutional requirement in respect of the latter does not apply to the statutory requirement for the averment of the name of the occupant or owner. Indeed, it is quite doubtful whether an application for a search warrant which sufficiently specifies the place to be searched is constitutionally defective because it fails to state the name of the owner or occupant of the place. See 4 *Wharton's Criminal Procedure*, § 1553; *Williams v. State*, 95 *Okl. Cr.* 131, 240 *P.* 2d 1132, 31 *A. L. R.* 2d 851; *Dixon v. United States*, 5 *Cir.*, 211 *F.* 2d 547, 549. And compare *Steele v. United States*, 267 *U. S.* 498, 45 *S. Ct.* 414, 69 *L. Ed.* 757, upholding the validity of a search warrant that did not specify the owner or occupant of the place searched.

In the *Dixon* case the Fifth Circuit Court of Appeals said:

"Appellant also claims that the search warrant is invalid because it is styled *'United States v. Search Warrant,'* appel-

lant's name not being stated. Though desirable, it is not essential to the validity of a search warrant that the owner or occupant of the premises be named. *U. S. v. Fitzmaurice, 2 Cir.,* 45 *F.* 133; *U. S. v. Leach, D. C.,* 24 *F.* 2d 965."

Our statute requires that the name of the owner or occupant "(if any)" shall be specified; but there is no requirement that facts supporting this averment be set forth. Evidentiary facts are required to show a probable violation of law, but not to show ownership or occupancy.

Third, defendants contend that the facts alleged are not sufficient to show probable cause that a violation of the lottery laws was taking place.

■ We have outlined above the general tenor of the affidavit. We are of opinion that the issuing judge was fully justified in holding that there was probable cause to believe that a "numbers bank" was in operation in the apartments specified.

■ It is said that the information received from the Wilmington Police Department respecting the bets received in certain shops in Wilmington and taken to the Williams apartment is hearsay, and is insufficient because it does not specify the names of the informing officers or the time when such information was communicated. The information was official, and there was no need to specify names, as is sometimes required in cases in which private informers are concerned. As for the time, it is evident from the language of the affidavit that the matter was not merely recent but current.

■ A similar objection is made to the reference to Williams' and Mezzatesta's police records. It is likewise without merit. The affidavit states the result of an examination of official records. The natural inference is that the defendants have probably been engaged in lottery policy violations.

■ It is said that the officers' statement about the two o'clock deadline does not mean that everyone who is seen coming and going at about that hour under any sort of suspicious circumstances is a lottery banker. Of course it does not; but the facts here alleged of the defendants' visits must be taken in conjunction with all the other circumstances. So taken, they justify the belief that the defendants were engaged in numberwriting. "The judge passing upon the application may give consideration to the experience and special knowledge of the police officers who may apply for a warrant." *Dean v. State*, 205 *Md.* 274, 107 *A.* 2d 88, 92, 48 *A. L. R.* 2d 1096, 1101.

■ Finally, it is said that the affidavit does not show any basis for a belief that lottery tickets were kept on the premises. On the contrary, the reasonable inference from the facts set forth is that papers of the kind specified in paragraph 1 were being delivered to these apartments. This, in connection with the other facts, is sufficient.

To sum up: defendants' attack on the affidavits is the often-used technique of attempting to isolate each allegation from the others. The affidavit must be considered as a whole.

We are of opinion that the application for the search warrants fully complied with our constitutional and statutory safeguards.

### 2. Williams' incriminating admission.

■ We have set forth Williams' statement: "It is our business". This was a voluntary and obviously a spontaneous statement containing an admission that the two men were responsible for the lottery violations and evidencing a desire to exonerate the woman from complicity. It was made in Mezzatesta's hearing and he remained silent. Hence the court admitted it as a direct confession of guilt by Williams. The court also admitted it as an "implied confession" by Mezzatesta, because he remained silent. The court charged the jury

that they might so find, provided the circumstances were such as not only afforded Mezzatesta an opportunity to act and speak, "but also such as would probably and naturally call for some action or reply from persons similarly situated." These rulings were in accord with the case of *State v. Blackburn*, 7 *Penn.* 479, 489, 75 *A.* 536, and with *State v. Dether* (*O. & T. Kent County*, 1947), unreported. An objection to the characterization of Mezzatesta's silence as an "implied confession" is considered later.

■ Defendant Mezzatesta urges, however, that this rule does not apply if, when the accusation is made, the defendant is under arrest, citing *People v. Rutigiliano*, 261 *N. Y.* 103, 184 *N. E.* 689, and *People v. Dolce*, 261 *N. Y.* 108, 184 *N. E.* 690.

There is much divergence of judicial opinion upon the point. See 2 *Wharton's Criminal Evidence,* § 661. Wigmore says (Vol. IV, § 1072):

"Certain situations in particular may furnish a positive motive for silence without regard to the truth or falsity of the statement. Whether the fact that the party is at the time *under arrest* creates such a situation has been the subject of opposing opinions; a few Courts (for the most part in acceptance of an early Massachusetts precedent), by a rule of thumb exclude the statement invariably; but the better rule is to allow some flexibility according to circumstances".

The New York rule is that a person in custody accused of a crime is under no duty to speak and that his silence should not be counted as giving assent. *People v. Pignataro*, 263 *N. Y.* 229, 188 *N. E.* 720.

Wigmore comments: "* * * but is 'duty' the appropriate idea? The real question is, what would be the *natural impulse* of an average person under the circumstances?"

There is ample authority supporting the rule that silence under accusation is admissible even though the accused is under arrest, provided that the circumstances were such as would naturally call for a reply. See, for example, *State v. Lambertino*, 180 A. 426, 13 *N. J. Misc.* 687; *People v. Amaya*, 134 *Cal.* 531, 66 *P.* 794; *People v. Foster*, 211 *Mich.* 486, 179 *N. W.* 295.

We agree with the rule as stated by Wigmore and announced in the cases cited. The evidence is ordinarily admissible, to be submitted to the jury under cautionary instructions, for such weight as the jury may give it. Circumstances may, of course, exist which would justify the court in excluding such evidence; but they do not exist here. Williams' statement was volunteered in Mezzatesta's hearing. The natural impulse of an innocent man would have been to challenge it; at least the jury could so conclude.

It is said that his silence was equivocal, because the statement attempted to exonerate his wife, and that his impulse would have been to acquiesce by silence. But the jury might have concluded that this was no reason for him not to deny guilt on behalf of both of them.

Both defendants take a special objection to the charge of the court in dealing with this evidence. The court referred to Williams' statement as a "confession" and gave a charge appropriate to a confession, and, as against Mezzatesta, a charge on the effect of an "implied confession".

It is said, first, that Williams' statement was not a "confession" but only an "admission", because the statement standing alone—"It is our business"—is meaningless. A confession, it is said, must be a statement admitting every essential element of the crime, and Williams said nothing expressly about lottery policy writing.

This argument scarcely merits an answer. The statement—"It is our business"—was made with reference to

the numbers slips found in the apartment, then being checked by the men. Manifestly, everyone present knew what Williams meant—that he and Mezzatesta alone were guilty.

As before stated, defendant Mezzatesta makes the further objection that even if Williams' statement was a confession by Williams his own silence was a mere admission, and should not have been referred to as an implied confession, citing *People v. Nitti*, 312 *Ill.* 73, 143 *N. E.* 448.

The use of the term "implied confession" to characterize silence under accusation of crime appears to derive from the charge to the jury in *State v. Blackburn, supra.* The charge was followed by the court in the *Dether* case, and by the trial court in this case. It may, of course, be said that the distinction between a confession and an admission is merely one of content, *i.e.*, if an admission, whether express or tacit, goes to the essentials of the charge, it is a confession. On the other hand, it has been held that it is unsound to say that everything said in the presence of the accused is to be taken as true merely because he remains silent; and that the silence is merely a circumstance to be weighed by the jury as having a tendency, by way of tacit admission, to establish the truth of the thing said. *People v. Nitti*, 312 *Ill.* 73, 143 *N. E.* 448, 455.

We have not found, in such independent research as we have been able to make, any judicial or text authority, except in the *Blackburn* case, that an admission by silence, or so-called implied confession, should be treated, in charging the jury, as having the same probative force an an express confession. This is what the *Blackburn* case appears to do. The charge is that "a free and voluntary confession is deserving of the highest credit"; and no distinction is made in respect of this degree of credit between express and implied confessions. We have some doubt whether this is proper.

But we do not reach that point. The defendant Mezzatesta never raised it in the trial court. We have examined the colloquy between counsel and the trial court, embodying the defendants' exceptions to the charge. These exceptions were two: (1) that the defendants were in custody and Williams' statement therefore inadmissible; and (2) that the statement was not a confession at all. The point that is now sought to be raised is that even if Williams' statement was a confession, Mezzatesta's silence was not. This was never raised, and it comes too late here.

Defendants also assert that the court's charge on confession was a forbidden 'comment on the facts. This is wholly without merit. The charge stated rules of law only.

3. Comment by the court on dismissal of certain charges.
Defendants' last point relates to the following matter:

The information filed contained counts charging violations of 11 *Del. C.* § 661, prohibiting the sale, or the possession with intent to sell, of lottery policies, or the use of any device used in lottery policy writing. Defendants moved the court for a directed verdict of acquittal on these counts. The court granted the motion. The court instructed the jury as follow:

"Informations Nos. 327 against Williams and No. 334 against Mezzatesta involve violations of both 661 and 662 of the 1953 *Delaware Code.* I have granted a judgment of acquittal for both defendants in respect to Section 661 and they appear in the separate informations that you will take to your room. In respect to 661 I have written the word "Out" and where I have' written that word "Out" you will not consider those paragraphs because, as I have indicated, they refer to the portion of the information on which I have granted a judgment of acquittal. My reason for granting the judgment of acquittal had to do with a defect in pleading only."

Defendants argue that it was prejudicial error for the judge to say that his reason for directing the verdict "had to do with a defect in pleading only". They insist that he should have said "lack of evidence" instead of "a defect in pleading". Defendants say that the remark must have influenced the jury in the consideration of the other charges, because there was an implication that there was in fact some evidence to sustain the charges.

We are unable to find any prejudice in the remark. By the court's express direction the issue of violations of § 661 was out of the case. We cannot assume that the jury disregarded the instructions. The presumption is that they obeyed it. Defendants' argument is ingenious speculation and nothing more.

We find no error in the record, and the judgments of the Superior Court are affirmed.