In the Matter of The entire premises of **INDEPENDENT OIL PRODUCTS, INC.,** located in the northeast corner of a free standing, single story, white masonary structure, door number 5 at the premises known as Earl's Tire Service, Inc., 185 South DuPont Highway, New Castle County, Delaware 19720

and

Search Warrant (Control No. D22610) issued by District Justice of Peace Brown, Chester County, Pa.

Superior Court of Delaware, New Castle County.

Submitted Dec. 9, 1981.

Decided March 30, 1982.

Christopher J. Curtin, Deputy Atty. Gen., Dept. of Justice, for State of Delaware.

Thomas W. Ostrander (argued), Pennsylvania, Pa., and Jay H. Conner, of Conner, Daley, Erisman & Van Ogtrop, Wilmington, for petitioners.

O'HARA, Judge.

Petitioners have filed a motion to quash search warrants, suppress evidence and for return of property. The Court concludes that the motion must be denied.

The threshold question is whether it is within the power of the Superior Court to consider a motion to suppress evidence seized pursuant to a search warrant issued by the Superior Court, when no criminal prosecutions have been filed against the petitioners whose premises were searched

and whose property was seized. The Superior Court Criminal Rule 41(e) * governs motions for return of property and to suppress evidence. Although the validity of a search warrant is usually tested in a post-indictment proceeding, the language of this rule does not specifically indicate that such motions may not be made before charges are filed, setting forth instead the latest time that the Court in its discretion may entertain the motion.

In the companion case, *In Re: Kent and Sussex Oil Products, Inc., et al.*, Del.Super., 80M–DE–18 & 81M–JA–18 (unreported decision of Judge Walsh, July 29, 1981) (*"Kent and Sussex Oil"*), this Court dealt briefly with this exact issue. The Court concluded that since the petitioners sought the return of items in which they shared a clear property right, they possessed standing to pursue their attack on the search warrants in their motion to quash the search warrants and secure the return of their property. Judge Walsh noted that the Federal counterpart of Rule 41 has been construed to permit such attack prior to the filing of an indictment or information. Since the petitioners in the present case are entitled to lawful possession of the property seized (e.g., it is not stolen, contraband, or otherwise forfeitable), petitioners have "standing" or legitimate expectations of privacy in the areas searched to herein seek to preclude prosecutorial use of that evidence which was "obtained as a result of an unlawful search and seizure." Rule 41(e). *See also, United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Having jurisdiction over the present motion, this Court, in its discretion, has chosen to entertain it.

On December 8, 1980, this Court and a Pennsylvania Court issued several warrants as part of an industry-wide investigation of practices by certain distributors of special fuel and home heating oil. Two of these search warrants with their supporting affidavits, are being questioned under the present motion.

The affidavit and application for search in the State of Delaware ("Delaware Application") describes two special fuel businesses, Independent Oil Products, Inc. ("Independent"), and its predecessor, Eshelman's 76, Inc. ("Eshelman's 76"), which the affiant believes to have committed the crimes of perjury, theft, filing of false instruments and tax evasion of the Delaware Special Fuel Tax. Both of these special fuel businesses are owned and operated by Jack Eshelman, who also operated four Delaware truck stops which sold special fuel to the motoring public.

According to the affidavit, the facts tending to establish probable cause for believing that the above criminal violations were committed are as follows:

In 1980, the affiant, the Director of the Division of Motor Fuel Tax ("Division") audited Allied Petroleum Marketers, Inc. ("A.P.M."), a licensed special fuel supplier which was a major supplier for petitioner, Eshelman's 76. The result of a desk audit was that the sales invoices for special fuel delivered to Eshelman's 76 at three of its truck stops from A.P.M. during June, July and August, 1977, showed delivery of a greater quantity of special fuel than was reported in the tax reports filed by Jack Eshelman with the Division for the same time period. In addition, A.P.M.'s sales invoices showed delivery of special fuel from July 25, 1977 to October 14, 1977 to a bulk

---

* Superior Court Criminal Rule 41(e) reads, in pertinent part, as follows:

"(e) *Motion for Return of Property and to Suppress Evidence.* An application for the return of property and to suppress for use as evidence anything obtained as a result of an unlawful search and seizure shall be made by motion supported by the affidavit of the person on whose behalf the motion is made. The motion shall state the grounds upon which it is made and shall set forth the standing of the moving party to make the application. The motion shall be made before the trial or hearing in which the property seized may be used as evidence, unless opportunity therefor did not exist or the moving party was not aware of the grounds for the motion; but the Court in its discretion may entertain the motion at the trial or hearing...."

plant facility leased to Eshelman's 76. Eshelman never reported receipt or disposition of this fuel. A.P.M.'s sales invoices for May, 1979, also show the delivery of fuel to Independent at one of Jack Eshelman's truck stops. This fuel was also not reported by Eshelman to the Division. Furthermore, on June 15, 1979, Jack Eshelman, in the presence of the affiant and the Assistant Director of the Division, admitted that he had skimmed special fuel taxes. Based upon these facts, the affiant asserted that the evasion of motor fuel taxes was an established practice, continuing over a period of time. The affidavit further states that business records of Eshelman's 76 and Independent are located in several file cabinets and are available for inspection at the Earl's Tire Service. Two auditors for the Division, on November 14, 1980, were present in the premises of Independent at the Earl's Tire Service address when they saw the records of Independent on the premises.

The affidavit and application for search in the Commonwealth of Pennsylvania ("Roosevelt Application") differs from the allegations in the above Delaware Application only in that the affiant states a belief that the business records of Jack Eshelman and his special fuel business were to be found on the premises of Mr. Nicholas Roosevelt in Oxford, Pennsylvania. This belief was based on three facts: 1) a memorandum dated December 8, 1977, directs A.P.M. to send all statements of account of Jack Eshelman to Nicholas Roosevelt; 2) the application for Special Fuel Supplier licenses for Independent, dated May 29, 1980, states, under penalty of perjury, that the business records of Independent may be examined at the premises of Roosevelt; and 3) on December 4, 1980, the affiant telephoned Mr. Roosevelt's accounting services and spoke to Mr. Roosevelt who informed him that Jack Eshelman was his client and that the special fuel supplier business records of Eshelman were at his address.

Based on these affidavits two search warrants were issued. Under authority of these search warrants business and financial records of petitioners were seized. Petitioners contend that the information alleged in the supporting affidavits do not establish probable cause to believe that a crime has been committed, is stale, and does not establish that the petitioners' records were located at the places to be searched. They also contend that the language of the warrants is so overbroad as to constitute "general warrants" which are expressly unconstitutional.**

### I.

■ In determining the sufficiency of the allegations supporting the conclusion of probable cause a neutral and detached magistrate is entitled to draw reasonable inferences from the allegations. *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

■ Petitioners specifically argue that among the facts and circumstances recited for establishing probable cause, the State relied upon a statutorily created presumption, that certain fuel delivered to Independent and Eshelman's 76 was "special fuel" and, therefore, taxable. 30 *Del.C.* § 5138(c) provides:

"For the purpose of enforcing this chapter, it shall be prima facie presumed that all special fuel received by any person into storage having dispensing equipment designed to fuel motor vehicles is to be transferred or delivered by that person into the fuel supply tanks of motor vehicles."

The affidavits allege that the various truck stops were observed to be special fuel dealers or suppliers, that A.P.M.'s sales invoices showed the delivery of more special fuel to these truck stops than was reported in the tax reports filed by Jack Eshelman, and that special fuel was delivered to a bulk storage tank with dispensing equipment designed to fuel motor vehicles. From this information, the affidavit presumes, pursu-

---

** The parties agree that the jurisdiction in which the seized property may be received as evidence, in this case Delaware, evaluates the validity of the search warrant.

ant to § 5138(c), that this was taxable special fuel. By relying upon this statutory presumption, petitioners maintain that the magistrate or issuing judge was precluded from independently determining that fuel delivered to petitioners' truck stops was "special fuel." The Court does not agree with this proposition. In reviewing the affidavit the issuing judge still makes an independent determination of whether the affidavit sets forth sufficient facts and circumstances, not only to make the statutory presumption applicable, but to establish probable cause to believe that a crime has been committed. The statutory presumption aids the magistrate in determining whether the fuel in question is "special fuel" but does not preclude the independent determination of probable cause. The affidavits, read in their entirety, *Mezzatesta v. State*, Del.Supr., 3 Storey 145, 166 A.2d 433 (1960), establish probable cause to believe that the petitioners participated in fuel tax skimming.

## II.

■ Petitioners argue that the search warrants are based upon information which was stale. Petitioners note that there is an 18 to 26 month time lapse between the alleged criminal activity and the date of the warrants.

Although time is the very essence in search warrant cases,

"[t]he mere passage of time between suspected criminal activity and the application for a search warrant does not render the information stale. Staleness refers to the age of the information upon which probable cause is based, which renders it unlikely that the evidence or instrumentalities of a criminal act are still present in the place to be searched." *Kent and Sussex Oil*, supra.

Based upon this definition, the Court must consider several variables in determining whether there was probable cause to issue the search warrant: 1) time; 2) character of the alleged crime, i.e., a single event or continuing conspiracy; 3) character of alleged criminal; 4) character of thing to be seized, i.e., permanent or easily disposed of; and 5) nature of place to be searched. *Kent and Sussex Oil*, supra, (citing *Andresen v. State*, 24 Md.App. 128, 331 A.2d 78 (1975), aff'd *sub nom*, *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

As in *Kent and Sussex Oil*, the nature of the variables involved in this case requires a conclusion that the probable cause was not stale. The corporate records involved here could reasonably be expected to remain in the same place for a long period of time, especially since 30 *Del.C.* § 5135 requires detailed records be maintained for three years by dealers and users of special fuel. In the present case, the character of the crime (potentially ongoing violations of state tax laws), the character of the criminal (established commercial entities in corporate form), the character of the things to be seized (corporate records, at least in part, required to be maintained by statute), and nature of the place to be searched (corporate and business offices) all compel, as in *Kent and Sussex Oil*, a conclusion that the probable cause for the search warrants was timely and not stale.

## III.

■ Petitioners also allege that the affidavits and applications for search fail to establish probable cause to believe that the records of Independent and Eshelman's 76 were located at the two places that were to be searched (Earl's Tire Service and premises of Nicholas Roosevelt).

### A.

Petitioners allege that the application to search Earl's Tire Service: 1) alleges insufficient facts and circumstances to show the location of the records; 2) alleges that the auditors who were on the premises to be searched only stated they saw records of Independent not of Eshelman's 76; and 3) doesn't state that the records of May, 1979 were located at the place to be searched.

The major flaw with this allegation is that it is based upon a hyper-technical, isolated reading of individual paragraphs of

the affidavit and application, instead of reviewing the entire affidavit as a whole. *Dunfee v. State*, Del.Supr., 346 A.2d 173 (1975). By reading the affidavit and application as a whole and non-technically, *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), it was reasonable for the issuing judge to conclude that the items sought are seizable by virtue of being connected with the alleged crime and will be found in the place to be searched.

The affidavit and application for search states that both Eshelman's 76 and Independent are Delaware corporations licensed to handle special fuel, are operating from the same locations and have Jack Eshelman as their president. In April, 1979, Eshelman's 76 ceased business operations but Jack Eshelman continued in business under the name of Independent. These facts reasonably infer the continuity of interest and singularity of operation between Jack Eshelman, Eshelman's 76 and Independent.

Petitioners argue that paragraph 30, read alone, alleges that motor fuel tax auditors, on November 14, 1980, approximately 24 days before the issuance of the search warrant, saw the records of Independent at the place to be searched, Earl's Tire Service. Although the affidavit does not allege that these auditors saw the records of Eshelman's 76 at the place to be searched, given the continuity and singularity of Jack Eshelman's businesses and the statutory requirement to retain records for three years, the independent issuing judge could reasonably infer that the records of Eshelman's 76 were also located upon the premises to be searched.

Petitioners also argue that paragraph 29, when read out of context, states a conclusion of the affiant that the business records of Independent and Eshelman's 76 are at Earl's Tire Service, the place to be searched, but makes absolutely no attempt to substantiate that conclusion by expressing the facts and circumstances upon which the affiant relied to reach his conclusion. They maintain that the statement is a classic example of the "bald and unilluminating

assertion" that the United States Supreme Court has consistently held does not provide a basis for probable cause. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). This rule, however, only applies to affidavits based on incriminating reports to the affiant by some informer or third party witness, i.e., hearsay. Under those circumstances the affidavit based on hearsay must contain reasonable corroboration of the hearsay reports. Such corroboration is not needed when the affidavit establishes probable cause "by setting out the incriminating personal observations of a reliable affiant (usually a police officer who is presumptively reliable)." *Wilson v. State*, Del.Supr., 314 A.2d 905 (1973). In the present case, corroboration is not needed since the affidavit states the personal observations of a reliable affiant (the Director of the Division of Motor Fuel Tax of the Department of Public Safety of the State of Delaware). The affiant states that the business records of Independent and Eshelman's 76 are located in several file cabinets and are available for inspection, as required by 30 *Del.C.* §§ 5135(b), 5138(b), at Earl's Tire Service and that affiant knows of no other location in Delaware where these business records are kept. No attempt to further substantiate this reliable observation of affiant is needed.

Petitioners lastly argue, as to the Earl's Tire Service search warrant, that the affidavit does not state that the particular records (i.e., those for May, 1979 when the desk audit revealed that Independent was allegedly involved in criminal activity), were located at the place to be searched. Although the two auditors told affiant that they saw the records of Independent at the place to be searched some 24 days before the issuance of the search warrant, they did not specifically state seeing the May, 1979 records. However, by reading the affidavit as a whole, with the relationship between Eshelman's 76 and Independent and with the statutory requirement of three year retention of certain records of the special fuel dealer or supplier, the issuing judge could reasonably infer that those May, 1979 records, along with other relevant records,

would be found at the location to be searched.

## B.

Petitioners similarly allege a lack of probable cause to establish that the records of Eshelman's 76 and Independent were located at the premises of Eshelman's accountant, Nicholas Roosevelt in Oxford, Pennsylvania. This affidavit and application for search also alleges the continuity and singularity of operation by Jack Eshelman through Eshelman's 76 and Independent. As previously stated, the affidavit further alleges that: 1) a memorandum directed A.P.M., the audited supplier, to send statements of account of Eshelman to Roosevelt's premises; 2) Eshelman's application for Special Fuel Supplier license for Independent states, under penalty of perjury, that Independent's business records may be examined at Roosevelt's premises; and 3) four days before the issuance of the search warrant the affiant spoke to Mr. Roosevelt on the phone who informed him that Eshelman was his client and that the special fuel supplier business records of Eshelman were at his address for inspection. Again, reading this affidavit in its entirety, and non-technically, the issuing judge could reasonably conclude that the items sought to be seized would be found at the place to be searched, the premises of Nicholas Roosevelt.

## IV.

Petitioners' final contention is that the language of the search warrants was so overbroad that they constituted unconstitutional "general warrants." Additionally, they argue that even if the warrants are stated with sufficient particularity, the search and seizure was so unreasonably overbroad as to be unconstitutional.

These same issues were decided in *Kent and Sussex Oil, supra.* Here, as in *Kent and Sussex Oil,* the affidavits set forth with great particularity the types of business records thought to evidence the crimes alleged. In fact, this list is exactly the same as that found in the *Kent and Sussex Oil* affidavits. The Court concluded, in *Kent and Sussex Oil*:

"that the warrant can be upheld by construing the affidavit as a whole, to limiting the items listed to the prescribed time period, December, 1978, through May, 1979. In light of the complexity of the scheme underlying the search, the mistaken seizure of certain unrelated documents is not unreasonable. Such documents would, at any rate, be protected through appropriate motions to suppress if unrelated items were used in other criminal proceedings. Indeed, the Court has already ordered the return of certain extraneous business records upon application of Kent and Sussex Oil Products, Inc. Given the pervasiveness of the criminal scheme, the broad range of evidence to be seized, and the complex nature of the items seized, the search herein was not unreasonable."

For these same reasons, the Court concludes that the warrants in question can be upheld by construing the affidavits as a whole to limiting the items listed to the prescribed time period of June 1, 1977 to May 31, 1979.

Additionally, as in *Kent and Sussex Oil,* the search herein was not unreasonably overbroad in light of the complexity of the criminal scheme, the broad range of items to be seized and the complex nature of those items.

In summary, the Court concludes that the search warrants herein under attack are supported by probable cause and are not overbroad in their application. Petitioners' motion to quash search warrants, suppress evidence and for return of property is should be denied.

IT IS SO ORDERED.